MARY M. MILLER,

*vs.*

HOB TEA ROOM, INC., a corporation of the State of Delaware, and HENRY P. BURROWS, JR.

*New Castle; September 25, 1950.*

*William E. Taylor, Jr.,* for plaintiff.

*Edwin D. Steel, Jr.,* and *William S. Megonigal, Jr.,* for defendants.

SEITZ, Vice Chancellor: By an agreement dated October 5, 1945, plaintiff sold to the defendant Burrows the entire capital stock of the Hob Tea Room, Inc., the second defendant. Burrows agreed to pay $30,000 for this stock; $5,000 was paid when the agreement was signed and the balance was payable in installments, the last of which was to be due on December 31, 1950. The stock was transferred to Burrows but held by an escrow agent to secure the balance of the purchase price. By agreement the balance was paid in advance and the stock turned over to Burrows.

This lawsuit revolves around paragraph 10 of the agreement which provides:

"Tenth: Buyer agrees that all receipts, including refundments of taxes, from any source whatsoever due said corporation at the date of this agreement, shall be paid over to Seller, with adjustment for any increased taxes to the corporation incurred by the receipt thereof."

On April 30, 1946, Hob filed refund claims with the Bureau of Internal Revenue for refund of federal taxes for the calendar years 1943 and 1944. These claims were

approved and Hob, during June, 1948, received, including interest, a total refund of $10,047.52 for those years.

Plaintiff claims that $8,326.63 of this amount is due her under the language of paragraph 10 of the agreement of October 5, 1945, or, in the alternative, that paragraph 10 fails to express the actual agreement of the parties and should be reformed to express that agreement, to wit, that plaintiff was to receive the proportion of those tax refunds which were produced by Hob's losses to October 5, 1945. Plaintiff argues, as a further alternative, that there never was an agreement relating to tax refunds and there should be a rescission to prevent unjust enrichment.

Plaintiff first asserts that she is entitled to recover the tax refunds under the agreement as written. This theory is contained in a motion to amend the pleadings to conform to the evidence. Defendants vigorously deny the right of plaintiff to amend at this stage to set forth this theory. Defendants point out that plaintiff's original complaint was predicated on the right to recover under the agreement as written and that defendant Hob challenged the jurisdiction of this court to hear the suit on that theory. Rather than argue that issue plaintiff moved to amend her complaint to charge that paragraph 10 of the agreement as written did not conform to the real agreement of the parties and should be reformed so as to provide plaintiff with her proportion of the tax refunds. The case went to final hearing on this theory and was tried on this theory. The defendants' counsel at every stage of the case resisted any attempt to try the case on the theory that there was a right to recover under the agreement as written. The question is, therefore, whether by a motion made some three months after the trial the plaintiff should be permitted to amend to reinstate a theory consciously abandoned.

*Chancery Court Rule* 15(*b*) deals with this type of amendment. It provides:

"(b) AMENDMENTS TO CONFORM TO THE EVIDENCE. When

issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Since this rule provides for amendments to conform to the evidence when issues not raised by the pleadings are tried by express or implied consent of the parties, it would seem to follow that amendments should not ordinarily be permitted long after the hearing when they would raise issues which were not tried with the express or implied consent of the parties. Indeed, here the defendants' attorney resisted any attempt to try the case on the theory now contained in the proposed amendment and so no consent on his part can fairly be implied.

Plaintiff's counsel argues that some of the evidence needed to support this theory was not available to him prior to the hearing and although brought out at the hearing, its full significance was not apparent until after the hearing. While there may well be situations where the matter should be handled by way of amendment with leave to the opposing party to introduce further evidence, I do not feel that this is such a case. Here the original complaint was predicated on the theory now sought to be raised by amendment. It was consciously abandoned after the complaint had been attacked on jurisdictional grounds. I cannot discover anything in the evidence which can fairly be said to constitute such a surprise as to justify an exception. The deposition of Burrows had been taken by previous counsel for plaintiff. Indeed, almost at the close of the evidence the court stated

that it understood there was no issue concerning the contract as written. That statement was not challenged by either side. It was not until several months after the trial that plaintiff moved to amend. I find nothing in the rulings of the court during the trial which lulled plaintiff into a belief that this issue was being tried. Viewed cumulatively, I do not believe the equities militate in plaintiff's favor. Compare *Friedman v. Transamerica Corp., (D.C.)* 5 *F.R.D.* 115. The motion to amend in order to rely on the agreement as written will therefore be denied. The merits of plaintiff's claim under the agreement as written are not decided.

I now consider the issue tried. Does the evidence show a mutual mistake concerning the legal effect of the language of paragraph 10 which entitles plaintiff to have the agreement reformed to express the agreement actually reached?

In March or April of 1945, plaintiff was advised by Stradley, admittedly her financial advisor, that she should sell her Hob stock to Burrows. All of the negotiations preceding the signing of the agreement were carried on by Stradley for the plaintiff. Plaintiff had no personal negotiations with Burrows or anyone representing him. Plaintiff's then attorney prepared the original draft of the contract, but he testified that he did not remember discussing paragraph 10 with Burrows or anyone representing him.

Paragraph 10 was inserted at Stradley's suggestion and in general the words thereof were his. Plaintiff's attorney inserted paragraph 10 after discussing it with Stradley. It does appear that Burrows' attorney made a slight change in the language. There was no evidence that Stradley discussed the meaning of paragraph 10 with Burrows or that he and Burrows had agreed that any tax refunds should be prorated to the date of sale.

Plaintiff testified that at the time the agreement was signed "there was a pleasant agreement that the excess taxes would be returned to me in due course." She could not remember anything further concerning the matter and

she could not definitely remember any particular person speaking about the refunds. Burrows and his attorney testified that no conversation with respect to such refunds took place. Burrows did state that there was a discussion concerning a post-war refund of $716.51 represented by a bond owned by the Hob. This item was turned over to plaintiff presumably under the terms of paragraph 10.

Plaintiff argues that if paragraph 10 does not cover the refunds claimed, it is meaningless insofar as it relates to refundment of taxes. Defendant denies this. Viewed apart from any construction placed on the language by the parties, I think the language has meaning even though it be construed not to encompass the present refunds. Speaking apart from any particular facts, it could encompass tax refunds which the government had formally stated were due under a processed claim. But it seems to me that the matter must be considered somewhat more broadly. The meaningfulness of a provision is obviously a fact to be weighed in attempting to determine whether or not an agreement not accurately reflected in the written agreement was actually made by the parties. Should, however, the meaning of the language be used as the sole substantial basis for determining that an oral agreement was reached which was not accurately reduced to writing? I do not believe it should be here because the testimony of plaintiff's strongest witnesses fell far short of showing any understanding with Burrows with respect to taxes apart from that reflected in the written agreement. Plaintiff's own testimony on this point was most vague and understandably so since she had left the matters up to her financial advisor and her attorney. However, plaintiff's case must be judged by the testimony of her witnesses, particularly those who were in the best position to know. Those witnesses could not testify that any agreement apart from that contained in paragraph 10 was discussed with Burrows. This court stated in *Colvocoresses v. W. S. Wasserman Co.*, 24 *Del. Ch.* 53, 4 *A.* 2d 800, 803:

"Where the relief sought under a bill to reform a contract is based on an alleged mistake, common to both parties, such mistake must be mutual, and must be shown by evidence that is in every respect clear and convincing, and free from doubt. \* \* \*"

"In order for a court of equity to reform a contract in writing, it has been well said, therefore, that the parties thereto must have previously 'come to a complete mutual understanding of all the essential terms of their bargain, for otherwise there would be no standard by which the writing could be reformed.' 5 *Willist, on Contr.* (Rev. Ed.) § 1548."

I conclude that the evidence fails to reveal the existence of any agreement relating to refunds other than that contained in paragraph 10. Consequently, there is no comparative basis for reforming the agreement.

In her motion to amend plaintiff also seeks to insert a claim for rescission of the contract on the ground that the parties failed to reach an agreement with respect to refunds. This theory appears for the first time in the motion filed some three months after the trial. Defendants contend that it comes too late.

As has already been indicated, defendants' counsel insisted throughout the trial that the issue (apart from the release question) was solely whether an agreement not reflected in the language of paragraph 10 had been reached by the parties. I cannot fairly find that the defendant either expressly or impliedly consented to try any other issues. Statements of counsel for the plaintiff indicate that he, during the trial, entertained the same view of the issues as did defendants' counsel. There was no intimation during the trial that plaintiff sought to rescind the contract on the ground that the parties had failed to reach an agreement concerning the disposition of refunds.

The desire to dispose of issues on the merits is understandably strong. However, the orderly administration of justice compels the court to consider the rights of all parties when it is asked, in effect, to ignore or deviate substantially from its own rules. In this case plaintiff's counsel obviously

scrutinized the pleadings with great care when he filed his amended complaint. Throughout the trial there was repeated reference to the issues being tried. Indeed, during the trial plaintiff sought one amendment not here relevant. The court cannot assume that defendants would not have presented additional evidence, etc., had they known such an issue was involved. I am forced to conclude that the application to amend to seek rescission comes too late and must be denied. The contention as to fraud in connection with the execution of the agreement has not been pressed.

Order on notice.