MARY M. MILLER,

*vs.*

HOB TEA ROOM, INC., a corporation of the State of Delaware, and HENRY P. BURROWS, JR.

*New Castle, November 8, 1951.*

*William E. Taylor, Jr.,* Wilmington, for plaintiff.

*Edwin D. Steel, Jr.,* of the firm of Morris, Steel, Nichols & Arsht, Wilmington, for defendants.

SEITZ, Chancellor: This is an action seeking reformation of a release dated December 31, 1947 given by plaintiff to the individual defendant Burrows.

Various aspects of this matter have previously been before this court. See *Miller v. Hob Tea Room, Inc.,* 31 *Del. Ch.* 404, 75 *A.* 2d 577. The present matter comes on pursuant to an amendment granted by this court permitting plaintiff to raise solely the question of the reformation of the release. This matter is of importance because plaintiff is now suing at law to recover amounts allegedly due

under Par. 10 of the agreement dated October 5, 1945 by which she sold the stock of the corporate defendant Hob to the individual defendant Burrows. The purchase price was to be paid over a period of years. Par. 10 of the contract provided:

"Tenth. Buyer agrees that all receipts, including refundments of taxes, from any source whatsoever due said corporation at the date of this agreement, shall be paid over to Seller, with adjustment for any increased taxes to the corporation incurred by the receipt thereof."

In May 1946 Hob filed claims for tax refunds for 1943 and 1944 under the carryback provisions of the Internal Revenue Code based upon losses incurred in 1945.

On December 31, 1947 Burrows paid plaintiff $20,-561.45. The release agreement under which the payment was made stated that plaintiff acknowledged the payment "in full settlement and satisfaction under the above-mentioned contract (of October 5, 1945), thus terminating and ending the said Agreement."

The last paragraph of the December 31, 1947 agreement provided:

"The Buyer and the Seller hereby agree to forever release and discharge each other, their Heirs, Executors, Administrators and Assigns from any further claim or demand whatsoever pertaining to the above recited agreement bearing date the Fifth day of October, A. D. 1945."

In 1948 the claims for refunds for 1943 and 1944, based upon the carry-back provisions of the I.R.C., were paid to defendant Hob and plaintiff seeks to recover some of these payments in her law action on the basis of the quoted Par. 10 of the Oct. 5, 1945 agreement. She seeks to reform the release because as presently written, it is my conclusion that it would be a bar to her law action. No question of fraud is raised by the evidence.

As a basis for reformation the complaint alleges that the release agreement of December 31, 1947:

"* * * does not express the actual agreement reached by the parties thereto, and should be reformed by this Court in order to express accurately the parties' intentions and to embody the terms of the agreement actually reached by the parties and improperly and incorrectly reduced to writing * * *."

Defendants' answer denies this allegation.

Defendants say that at no time prior to the execution of the release did plaintiff and defendant Burrows come to an agreement that all claims arising under Par. 10 of the 1945 contract should be excluded from the release. In the absence of such evidence, say defendants, the plaintiff is not entitled to reformation. Let us first look to the evidence and then consider the applicable law.

I conclude that neither the plaintiff nor the defendant Burrows contemplated that plaintiff's rights, if any, under Par. 10 of the agreement of Oct. 5, 1945, were covered by the release dated Dec. 31, 1947. However, their reasons therefor were entirely different. Plaintiff felt that the release related to the reduction in and the acceleration of the purchase price. The defendant Burrows had already concluded that under his construction of Par. 10 the taxes, if any, belonged to the Hob and not to plaintiff. Hence, from Burrows' standpoint it was not even involved when he came to execute the release. Plaintiff and her agents did not know of Burrows' conclusion, previously made, that the refunds here involved belonged to the Hob. Nor, in my opinion, did Burrows know of plaintiff's attitude at the date the release was executed.

The settlement, in my opinion, related exclusively to a reduction in and an acceleration of the purchase price. The whole emphasis was on the reduction in the stipulated purchase price. This is borne out by Burrows' own testimony and exhibits. It may be noted that the provisions of Par. 10 of the original agreement do not relate directly to the subject matter of the monetary consideration. Accepting the testimony of defendants' witnesses that the

subject of taxes was not mentioned in their presence when the settlement and release were negotiated, nevertheless this factual situation is as consistent with plaintiff's theory as with defendants' in view of the history of the negotiations and the respective understandings of the parties.

Under this factual picture is plaintiff entitled to relief? Plaintiff says "yes" because the release is shown to embrace more subject matter than the parties intended to cover. Defendants say "no" because there is no showing of the required pre-existing agreement that the release was not intended to cover the tax provision of the agreement.

It is apparent that the parties disagree as to the applicable law. Plaintiff says, in effect, that she need only show that the release is broader than the agreement actually reached while defendants say that plaintiff must show a pre-existing agreement that such was their intention before relief can be granted. Which contention is correct?

The general release provisions must be considered in the light of the specific subject matter to which they relate. See 6 *Williston on Contracts*, (*Rev. Ed.*) § 1825. When so viewed and when considered in the light of the surrounding circumstances, I conclude that the release was intended by the parties to relate solely to the payments due under the $30,000 purchase price provision of the original agreement. Plaintiff has shown a pre-existing agreement which is narrower than the written release. If both parties intended only to cover a limited area, viz., the renegotiated balance of the purchase price, then a release executed pursuant to such intention which was broader and included a subject not agreed upon was executed pursuant to a mutual mistake of fact or its equivalent. In such a situation the court will grant relief by way of reformation. See generally 2 *Restatement of Contracts*, § 502.

Defendants say that plaintiff must show a pre-existing agreement that the parties intended to exclude the subject matter of Par. 10. I cannot agree. In this situation, it

seems to me, the very point is that the parties covered more ground in their written release than they intended. This is a very understandable type of mistake particularly when a release is involved. Certainly in such a situation the law does not require a showing of an actual agreement that other matters were to be excluded. Such a requirement would be imposing a burden contrary to the spirit of the remedy and the realities of the situation involved. Nor do the Delaware cases, in my opinion, require the finding of such a negative agreement before reformation can be granted in this situation.

Defendants say a heavy evidentiary burden is placed on plaintiff here and that such a burden has not been met. The evidence is clear that the parties executed the release solely with reference to the purchase price. Neither party considered the release as dealing with Par. 10. In fairness, therefore, the question of the rights of the parties under Par. 10 should be removed from the operation of the release. I so decide and the release will be reformed accordingly.

Order on notice.