JOHN W. DUGAN and MARIE S. DUGAN,

*vs.*

ANTHONY BOSCO, MILDRED T. BOSCO, JOSEPH BOSCO and MARY A. BOSCO.

*New Castle, October 19, 1954.*

*Robert C. Barab* and *Michael A. Poppiti,* Wilmington, for plaintiffs.

*C. Edward Duffy* and *Stephen E. Hamilton, Jr.,* Wilmington, for defendants Anthony Bosco, Joseph Bosco and Mary A. Bosco.

*Aubrey B. Lank,* Wilmington, for defendant Mildred T. Bosco.

SEITZ, Chancellor: This tragicomedy can best be understood by a chronological statement of the facts. Originally, the defendants, Joseph Bosco and his wife, owned a single tract on River Road, having a 100 foot frontage and a depth of 305.72 feet. Joseph desired to

make a gift to his son of a lot on which his son, Anthony, might build a home for himself and his wife. He had the tract divided into two lots of equal size with 50 foot frontage. On August 18, 1948, Joseph and his wife executed a deed to their son, Anthony Bosco, also a defendant, conveying one of the lots to him. He retained the other lot with the then intention of later giving it to his daughter so that she might build a home thereon. By mistake, which all parties concede, the deed did not convey the lot which Joseph intended to convey and which Anthony understood he was receiving. Rather, the deed conveyed the lot which Joseph was retaining for his daughter.

Believing he had attained title to the "right" lot, Anthony Bosco and his wife proceeded to build a house thereon. But of even greater importance, it turns out that a portion of their driveway and of the septic system were located on the vacant lot. This is the storm center of the controversy.

The house was built with the front approximately parallel to River Road. However, the sides of the house are not parallel with the side lines of the lot because the lot lines do not run at right angles to River Road. Thus, the left front and right rear corners of the house (looking from River Road) are, in varying degrees, close to the side lines of the lot. In order to build, Anthony and his wife obtained a construction mortgage loan on which Joseph Bosco signed a collateral bond for $10,000.

Soon after they finished building, Anthony and his wife sold the property to plaintiffs and received the full purchase price. Plaintiffs subsequently discovered the mistake and the encroachments and this lawsuit followed.

Plaintiffs have not yet moved into the house. However, they converted it into apartments before discovering the matters now before the court. They plan to occupy the second floor apartment for themselves.

Defendant, Joseph Bosco, recognizes that the conveyance of the still vacant lot was a result of a mutual mistake of fact and he is willing to convey the lot on which the house was built. However,

he claims that he is entitled to receive, in exchange, a deed to the entire vacant lot including the portion thereof on which a part of the driveway and septic system are located.

Plaintiffs contend that they are entitled to have conveyed to them the lot on which their property is located and are entitled to retain the portion of the so-called vacant lot on which the driveway and septic system are located. If such is not the case, then they seek a rescission of the transaction.

I believe that all parties agree that I should decide the merits of the controversy as though Anthony, at the time of the sale to plaintiffs, actually held record title to the lot on which the house was located. To the extent that such an assumption will not affect the evaluation of the evidence on the disputed issues, the court will so proceed.

We come then to plaintiffs' argument that Joseph is estopped to assert title to that portion of his lot on which the driveway and septic system are located. We start with the fact that the identity of the record title was as available to plaintiffs as it was to Joseph and that plaintiffs, then living next door, followed the progress of the construction. I agree that plaintiffs assumed, and not unreasonably, that the driveway and septic system were on the lot they were purchasing. But that does not constitute enough to impose an estoppel against Joseph. We must remember that he did not sell to plaintiffs.

What, according to plaintiffs, did Joseph do or fail to do which would estop him from retaining possession to the entire vacant lot?

Plaintiffs say I should find as a fact that Joseph knew or should have known of the encroachments. Joseph denied that he had such knowledge. Indeed, shortly after the conveyance to Anthony, he had refused Anthony's request for additional footage on that side. Moreover, relations between father and son became strained at the inception because the son refused to use the contractor suggested by the father. These facts do not suggest that Joseph would have tolerated a known encroachment.

The physical facts are also consistent with lack of knowledge of the encroachment of the driveway. The driveway is perpendicular to River Road whereas the boundary line is not. As a consequence, it would be most difficult to determine that there was an encroachment at the place where the encroachment exists, that is, at least 40 feet from River Road. This is especially true since Joseph also owned land to the northeast of the lot. The encroachment was substantial for only a small part of the 305.72 feet side line. Under the above circumstances, an encroachment for a short distance would not be noticeable. Also, the driveway, as a driveway, did not come into existence until at least two months after the completion of the house. Joseph would have had no occasion to pay any particular attention to it at that time. Moreover, there were no markers and it did not go as far back as plaintiffs contend and so was not obviously "over on" the vacant lot.

It is true that Joseph watched the progress of construction but under the circumstances it is not hard to believe that he was unaware that there were encroachments. This is true particularly of the septic system. My view of the premises leads me to believe that it was quite easy to have encroached on Joseph's property in the manner here involved without a reasonable person becoming aware of it. Joseph testified that he did not know of them and I did not get the impression from Joseph's testimony that he was disingenuous.

I therefore conclude that plaintiffs are not entitled to relief against Joseph or Mary Bosco on any theory of equitable estoppel.

But plaintiffs contend that even conceding that Joseph neither knew of the encroachments nor was negligent in that respect, nevertheless, plaintiffs must prevail because under the equitable maxim that where loss or damage must fall upon one of two innocent parties, it ought to be borne by the one by whose mistake the other has been misled. Plaintiffs' counsel fail to point out explicitly the nature of Joseph's mistake. I assume that they are not referring to the original mistake in conveying the wrong property because that did not mislead plaintiffs in any respect relied upon here. Nor am I able to discover any mistake which would render the doctrine applicable.

Plaintiffs urge that if they are not entitled to relief against Joseph, as I have now decided, then they are entitled to a rescission of the agreement as against Anthony and Mildred.

At the inception of the trial plaintiffs' counsel stated that relief by way of rescission was not sought. But at the close of the case he took the present position. I infer from the memoranda that counsel for all defendants deny plaintiffs' right to rescission but do not raise any question of possible prejudice based on the state of the pleadings or the matters tried. I also assume that no issue of "tender" is raised. I will therefore decide the issue on the merits but counsel may advise me if my understandings are incorrect.

■ Plaintiffs say, and I agree, that they purchased the property on the reasonable assumption, from the appearance of the premises, that they were getting title to the house, driveway, and septic system. It is not reasonable to impose on a potential purchaser—as against this seller in these circumstances—the duty to ask concerning the location of the septic system or to dig up the ground to find out. We add to this the fact that Anthony sold the property knowing but not disclosing that a portion of the driveway was on the adjoining property and knowing, though the contrary appeared, that there was not sufficient room for the driveway to clear the house in going to the rear of the property on that side. I believe that Anthony was silent as to this material fact at a time when he was under a duty to speak. He must be said to have intended his silence to mislead.

Anthony testified that he did not know that a portion of the septic system was over on the vacant lot. Certainly, as between him and the plaintiffs, it is apparent that he would be more likely to know the facts. But, in any event, as to the septic system both plaintiffs and Anthony labored under the mistaken belief when the property was sold that the entire system was on his property.

■ It thus appears that as to the driveway, there was a material misrepresentation by Anthony and as to the septic system there was at least a mutual mistake of fact. Both were material and both were relied upon by plaintiffs.

But defendants say that plaintiffs are not entitled to rescission because they have affirmed the transaction. I am unable to find any factual support for this statement. It is obvious that the probabilities may be such that permitting plaintiffs to rescind, as against Anthony, would be for them a Pyrrhic victory—since plaintiffs might only get a money judgment (duly adjusted) and Anthony might get his property back. But such possibilities do not aid the defendants.

Secondly, defendants say that the court cannot grant rescission because plaintiffs have lost their ability to restore the *status quo* because they have converted the house into apartments.

In view of Anthony's misrepresentation, particularly, I do not believe that the change defeats plaintiffs' right to rescission, although a further hearing will be necessary to determine how that fact will influence the kind and amount of relief to be granted plaintiffs. See *Hegarty v. American Commonwealth Power,* 19 *Del.Ch.* 86, 163 *A.* 616; compare opinion of Judge Rodney in *Whitman Co. v. Universal Oil Products, (D.C.Del.),* 125 *F.Supp.* 137; 3 *Black on Rescission of Contracts (2nd ed.)* § 618. Counsel should apply promptly for a further hearing date.

Joseph will be directed to deed the house lot to plaintiffs when plaintiffs deed the vacant lot to him. Plaintiffs will be given reasonable time to remove the encroachments on the vacant lot.

Order on notice.