Nick Lutzcovich,
Plaintiff,

*vs.*

Steve S. Nedwick, Jr. and Alfreda Nedwick, his wife,
Defendants.

*New Castle, July 16, 1957.*

*Everett E. Borton,* Wilmington, for plaintiff.

*J. D. Winslow,* Wilmington, for defendants.

MARVEL, Vice Chancellor : The amended complaint in this case alleges that plaintiff was induced to enter into a contract for the sale of land (on terms hereinafter discussed) in reliance on statements made not only by defendants in the presence of their attorney but also by the attorney himself. These statements are alleged to have misrepresented the effect on plaintiff's rights of a proposed purchase money mortgage to be given by defendants in connection with the sale of land by plaintiff to defendants. It is claimed that defendants and their attorney stated that if plaintiff were to receive a substantial sum of cash or its equivalent as a result of the sale, plaintiff would be liable for a tax on the transaction and that as a result of moneys paid or owed to him in such a transaction plaintiff would also lose his Veterans Administration pension. Plaintiff apparently takes an alternative position that he was also misled by the concealing of information from him.

There is obviously a tax due on the sale of capital assets at a profit, however, I am satisfied that regulations of the Veterans Administration in force at the time of the transaction permitted plaintiff as a single man to receive up to $1,400 per annum in the form of non-pension income without affecting his pension and that such income received by him in excess of $1,400 in any one year would have meant a loss of pension for only the balance of the year in which such outside income was received.

Plaintiff seeks rescission of the sale on the basis of alleged misrepresentations or concealment of information and prays for an order directing defendants to reconvey the land to him.

In my opinion it is unnecessary to review in detail the facts which led up to the contract and deed under attack. Suffice it to say that plaintiff during the course of negotiations, although ill and handicapped, exhibited a native shrewdness about his rights and I am satisfied that defendants' attorney, while protecting his own clients' interests, not only attempted to carry out plaintiff's wishes, but advised him to seek advice from the Veterans Administration.

Plaintiff, a disabled veteran of the Army of the United States, for many years has drawn a monthly pension of $78.75 or a total of $945 a year. As of the time of the transaction complained of such pension apparently constituted his sole income. Approaching the age of 66 years he found he was no longer able to maintain his farm in Pencader Hundred or even to protect it and himself from trespassers. While offers to buy his farm at a price of $4,000 or thereabouts had been made to him, plaintiff not only considered such a sum inadequate, but was also concerned about a possible loss of his pension in the event of any substantial cash sale or its equivalent. He labored under the impression that any payment to him, which added to his pension would result in his receiving in excess of $1,400 in any year, would, if the authorities learned of it, result in a permanent loss of his pension. It is obvious that plaintiff understood the nature of a mortgage and in the exercise of his business judgment preferred that one be given him in connection with the contemplated sale of his land, however, as indicated above, he feared the effect of a mortgage on his pension. Accordingly he agreed to an arrangement under the terms of which defendants in return for a deed obligated themselves to pay plaintiff the sum of $420 a year [1] for life. Such an annual payment over and above the amount of his pension satisfied plaintiff at the time of the transaction under attack that he would not thereby jeopardize his pension rights and would be enabled by such additional annual payments to live a slightly more comfortable life.

The agreement provided that the annual payment of $420 (payable semi-annually) was to be a charge on the land in question during the life of plaintiff and that on failure of the defendants, their heirs or assigns to make an annual payment for a year that plaintiff might "* * * demand a reconveyance * * *" of the farm "* * * without paying * * * any consideration whatsoever." It is further provided in the agreement that defendants would pay taxes [2] on the property,

---

1. The sum of $420 was apparently arrived at by computing interest at 6% on a proposed purchase money mortgage of $7,000. Originally 5% interest was suggested, but plaintiff wanted more income. A cash down payment was never contemplated.

2. Net $11.54 for the period from July 1, 1956 to June 30, 1957.

keep the buildings on the property properly insured against loss by fire, and that in the event of such loss the insurance proceeds should be used to repair such damage.

In so drafting the agreement I am satisfied that defendants' attorney was seeking to avoid any forfeiture on plaintiff's part and that such attorney was unaware of the fact that plaintiff's disability pension would not be affected unless plaintiff received income in excess of $1,400 in any one year over and above his pension. Defendants themselves were obviously unaware of this fact. Such attorney and his clients were also unaware of the fact that if plaintiff's income should exceed $1,400 in any one year from sources other than amounts (except subsistence) received from the United States Government under Veterans Administration laws because of disability, the proceeds of a fire insurance policy and separate income of a spouse, that such loss of pension would occur only in the years in which such excess income was received. Accordingly it follows that no misrepresentations about a loss of pension by plaintiff were made or could have been made by defendants or their counsel, and, as noted earlier in this opinion, statements by such counsel to the effect that a tax is assessed on the sale of a capital asset at a profit were true. Accordingly if plaintiff is to be granted the relief prayed for, the basis for such relief must be mistake and not fraud or the like.

While the maxim *"ignorantia juris haud excusat"* and its equivalent has been applied to deny relief for mistake of law, it is apparent that this general principle is subject to many exceptions and explanations. See *Stoeckle v. Rosenheim,* 10 *Del.Ch.* 195, 87 *A.* 1006. Furthermore I am not convinced that cases involving a mistake of law pure and simple are controlling in a case such as this, or that the principles laid down in *Commissioners of Lewes v. Breakwater Fisheries Co.,* 13 *Del.Ch.* 234, 117 *A.* 823 and *Trounstine v. Remington Rand, Inc.,* 22 *Del.Ch.* 122, 194 *A.* 95, are at odds with what I believe to be the equities in this case. It should also be noted that this is a case of rescission. If this were a suit to reform a contract, a heavier burden of proof would rest on plaintiff.

■ I am convinced that the critical element in deciding whether or not relief should be granted in this type of case is not whether there has been a mistake as to the law of the land as opposed to a mistake of mixed fact and law or a mistake as to private legal rights inasmuch as the proper basis for the granting or denying of relief should be that of unjust enrichment or its absence, *Clifton Mfg. Co. v. U.S.*, 4 *Cir.*, 76 *F.2d* 577. In other words did plaintiff because of a mistake surrender to defendants a valuable property right?

Here, plaintiff by contract is to receive the equivalent of a return of 6% on a theoretical purchase money mortgage of $7,000 without the security he would have received had such a mortgage actually been given. Admittedly he has a contract under which he has the right to receive $420 a year for life, but he is 66 years old and not in good health. Had he received the bond and mortgage (which were actually prepared by defendants' attorney) he would be in a substantially better financial position than that in which he now finds himself. Defendants, on the other hand, hold a fee simple title, payments for which will be terminated under the agreement on plaintiff's death. Furthermore, a mortgage would have provided the basis for a foreclosure action on default of payments in lieu of plaintiff's present right to "demand a reconveyance" in such event.

■ Accordingly, while I have noted that a genuine effort was made by defendants' attorney to protect plaintiff, while giving effect to his bizarre plan, I am of the opinion that plaintiff through mistake gave up valuable property rights and thereby enriched defendants at his own expense. I so decide even though I recognize that the arbitrary mortgage figure of $7000 may be unrealistic even in the absence of any down payment although defendants, prior to consummation of the final contract and conveyance, were apparently willing to give such a mortgage.[3]

There is testimony as to expenditures made by defendants in reliance on the contract. If the parties cannot agree on this figure,

---

3. The mortgage and bond as prepared provided for payment on or before the expiration of five years, with interest at 6% per annum, the mortgagors to have the right to pay principal in multiples of $100 on any interest date.

the Court will make the necessary finding as to such amount so that the parties may be returned to the positions held by them prior to the transaction complained of. As to defendants' other defenses, I am satisfied that having accepted only the initial payment tendered at the sale, plaintiff acted promptly when he ascertained his rights, and I fail to see any prejudice to defendants in having the case decided on the basis of mistake rather than fraud. There is no element of surprise inasmuch as the Court has merely adapted its findings to an actionable theory of plaintiff's case, a theory which defendants have briefed.

In conclusion it should be noted that I am not impressed with defendants' contention that the Court may not, in effect, take judicial notice of Veterans Administration laws and regulations governing pension payments to the militarily disabled.

On notice, an order will be entered rescinding the parties' contract, placing the parties in statu quo ante and directing defendants thereafter to convey the property in question to plaintiff.