Ruth Ann GER and Errol Ger, Plaintiffs,

and

Sachs Realty Inc., a corporation of the State of Delaware, Intervening Plaintiff,

v.

Donna T. KAMMANN and Richard W. Kammann, Defendants.

Civ. A. No. 79–608.

United States District Court, D. Delaware.

Dec. 15, 1980.

L. Kent Wyatt of Aerenson, Balick & Ferrara, Wilmington, Del., for plaintiffs.

Richard A. Levine of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for intervening plaintiff.

Paul H. Spiller of Kimmel & Spiller, P.A., Wilmington, Del., for defendants.

## OPINION

STEEL, Senior District Judge:

This litigation arises out of a contract dated June 23, 1979, for the sale to Dr. and Mrs. Errol Ger, the plaintiffs, of a residence in Westover Hills, Wilmington, Delaware, owned by Mr. and Mrs. Richard Kammann, the defendants. Plaintiffs made a payment of $15,000 which was placed in an escrow account in advance of October 31, 1979, the date provided for final settlement. The present suit was brought to recover that sum, together with interest and damages.

Prior to signing the contract, on separate occasions, Mrs. Kammann gave to Mrs. Ger two surveys of the property, showing a sanitary sewer line running under the property but away from the house. These surveys had been given the Kammanns by previous owners of the property and were given to Mrs. Ger as a courtesy by Mrs. Kammann.

Prior to settlement, plaintiffs themselves had a survey made of the property and learned for the first time that a portion of an addition to the house had been built on a sewer easement by a previous owner who had failed to obtain a building permit. Plaintiffs notified defendants of the encroachment of the easement and sought to have defendants pay the cost of removing

the sewer line. When plaintiffs were unsuccessful, they notified defendants that the contract had been breached, was terminated, and demanded a return of the $15,000 which plaintiffs had deposited. Defendants refused to return the deposit and plaintiffs commenced this action.

Defendants filed an answer which alleged that at all times they were ready, willing and able to perform the contract and complete settlement in accordance with its terms. In a counterclaim, defendants assert that plaintiffs, by refusing to go through with the settlement, had themselves breached the contract. Defendants prayed for specific performance and damages. Since the defendants have resold the property, the claim of specific performance is moot.

The contract provided, in part:

Title to said property to be good, marketable, fee simple title, free and clear of all liens and encumbrances of record, but subject to all existing easements and restrictions of record. In the event the Seller is unable to give a good and marketable title such as will be insured by a licensed title company, subject to the aforesaid, Purchaser shall have the option of taking such title as the Seller can give, or of being repaid all monies paid by the Purchaser to the Seller on account of the purchase price, together with cost of searching title as he may have incurred and this contract shall become null and void.

Defendants refused to move the sewer line but offered to provide plaintiffs with a title insurance policy issued by the Title Insurance Company of Pennsylvania. Mr. Pentecost, a vice president of the company, testified that if the Title Insurance Company knew of the burdened easement, the company would guarantee the holder of the policy against loss because of that condition and purchasers would have a good and marketable title subject to the encroachment. He stated, however, that an insurance policy would not insure holders against damages which they might incur as a result of the encroachment to a subsequently built deck, or to trees or shrubs which might be planted later. Nor would it insure a homeowner against any reduction in value of the property in the event that subsequent potential purchasers were concerned with the encroachment. This was consistent with advice the plaintiffs had received from their attorney, and plaintiffs were unwilling to accept a policy that did not give them this broader coverage.

■ As a basis for seeking a refund of the $15,000 deposited with defendants, plaintiffs argue that the agreement of sale is void because it was entered into as a result of a mutual mistake of material fact. It is undisputed that neither of the parties knew or had reason to know of the sewer line running under a portion of the house before the contract was signed and both parties intended to buy and sell an unencumbered house. Both plaintiffs testified that they would not have signed the contract had they known of the easement. It is clear that the contract was entered into as a result of a mutual mistake of this material fact, and as such, should be rescinded by the Court.

■ Mutual mistake of a material fact may be cause for a court to rescind a contract for the sale of realty. In *Dugan v. Bosco*, 34 Del.Ch. 599, 108 A.2d 586 (1954), plaintiffs bought a house from defendants, paying the full purchase price. Before moving into the house, plaintiffs converted it into apartments. They thereafter discovered that a portion of the septic system was situated on an adjacent vacant lot, and that a portion of the driveway was also on the adjoining property. The plaintiff-buyers brought suit for rescission of the contract, and the court concluded that plaintiffs demonstrated a right to that relief.* The court found that there had been a material misrepresentation by the defendant regarding

---

* In view of the conversion of the house to apartments, which changed the status quo ante, a further hearing was ordered to consider the kind and amount of relief to be granted the plaintiffs.

448

the driveway. As to the septic system, a mutual mistake of fact was found by the court because "both plaintiffs and [the defendant] labored under the mistaken belief when the property was sold that the entire system was on [the defendant's] property." *Id.* 108 A.2d at 589. Based upon these misconceptions and plaintiffs' reliance upon them, the court ruled that plaintiffs were entitled to rescission, or other appropriate relief under the circumstances. *See also Lutzcovich v. Nedwick*, 36 Del.Ch. 503, 134 A.2d 268 (1957).

The law generally is in accordance with this Delaware law. The Supreme Court stated in *Grymes v. Sanders*, 93 U.S. 55, 60, 23 L.Ed. 798 (1876):

A mistake as to a matter of fact, to warrant relief in equity, must be material, and the fact must be such that it animated and controlled the conduct of the party. It must go to the essence of the object in view, and not be merely incidental. The court must be satisfied, that but for the mistake the complainant would not have assumed the obligation from which he seeks to be relieved.

Following this theory, various authorities have stated that "where both parties assume the existence of a certain state of facts as the basis on which they enter into a transaction, the transaction can be avoided by a party who is harmed, if the assumption is erroneous." Restatement of Contracts § 502, comment a; *Raddue v. Le Sage*, 138 Cal.App.2d 852, 292 P.2d 522 (1956). *See also* 13 *Williston on Contracts* § 1554 (Jaeger ed., 3d ed. 1970); *Davey v. Brownson,* 3 Wash.App. 820, 478 P.2d 258 (1970); Annotation: "Vendor and Purchaser: Mutual Mistake as to Physical Condition of Realty as Ground for Rescission," 50 A.L.R.3d 1188 (1973).

It is unnecessary to consider whether plaintiffs' refusal to accept the title policy adversely effected their right to terminate the contract. The plain fact is that the contract would not have been entered into but for the mutual mistake. Unlike the mistake in *Derwell Co. v. Apic, Inc.*, 278 A.2d 338, 342 (Del. Ch. 1971), the mistake

was not the result of any negligence on the part of the plaintiffs in this case. And the mistake was a mutual one, not a unilateral mistake of fact as in *Conklin v. Davi*, 76 N.J. 468, 388 A.2d 598, 602 (1978). That was also the case in *Miller v. Hob Tea Room, Inc.*, 31 Del.Ch. 404, 75 A.2d 577 (1950), 84 A.2d 170 (Del.Ch.1951), *rev'd*, 33 Del.Ch. 38, 89 A.2d 851 (Del.1952).

The above opinion constitutes the findings of fact and conclusions of law of this Court. Insofar as the case involves the mutual claims of the original parties against each other, plaintiffs are entitled to the sum of $15,000, together with the interest accrued in the escrow account.

■ Insofar as each of the parties has made claims of damages against the other, none will be allowed. The general rule is:

The effect of the "rescission" of a contract is to extinguish it for all purposes, not only to preclude the recovery of the contract price but also to prevent the recovery of damages for breach of the contract.

*Hyman v. Cohen*, 73 So.2d 393, 397 (Fla. 1954); 17 Am.Jur.2d, *Contracts* § 516 (1964); 12 *Williston on Contracts* § 1454 at 3–4 & n.4.

Sachs Realty, Inc., a realty corporation, has intervened as a plaintiff in this action. It alleges that it was a co-broker of the sales contract and that the defendants are obligated under the contract to pay it $4,000 as a commission in bringing about the execution of the contract. In light of the ruling of the Court, no disposition of this issue will be made at this time. The parties are promptly to arrange for the filing of memoranda on this issue and advise the Court of the schedule agreed upon. Until the memoranda are received, the Court reserves judgment on this issue.