[No. 17170. Department One. October 21, 1922.]

JOHN PETER THIEL *et al., Respondents,* v. HENRY F. MILLER *et al., Appellants.*[1]

VENDOR AND PURCHASER (14)—RESCISSION—MISTAKE OF FACT—EVIDENCE—SUFFICIENCY. A conscious and mutual want of remembrance and knowledge as to the terms of a loan secured by mortgage, assumed by the purchaser of the property, is not such a mutual mistake as to warrant a rescission by the purchaser, who voluntarily entered into the contract in the face of his conscious ignorance.

SAME (165)—RESCISSION BY VENDOR—DEFAULT. The failure of vendees to comply with the terms of the contract of purchase, in substantial respects, after fair opportunity to do so, entitles the vendors to give notice of forfeiture under the terms of the contract.

JURY (4)—RIGHT TO JURY TRIAL—EQUITY. There is no right to a jury trial in an action seeking the forfeiture of the rights of purchasers of land, where the defendants filed a cross-complaint seeking rescission of the contract and recovery of payments made.

VENDOR AND PURCHASER (145)—RESTORATION OF POSSESSION—WRIT OF ASSISTANCE. A writ of assistance may be issued to put plaintiffs into the possession of land, upon a judgment of forfeiture of a contract for the purchase of land, where it appears that plaintiffs are entitled to recover possession.

Appeal from a judgment of the superior court for Adams county, Truax, J., entered January 12, 1922, in favor of the plaintiffs, in an action for equitable relief, tried to the court. Affirmed.

*G. E. Lovell,* for appellants.

*Adams & Miller,* for respondents.

PARKER, C. J.—As originally commenced by the plaintiffs, Thiel and wife, this was an action seeking forfeiture of the rights of the defendants, Miller and wife, in a large ranch consisting of certain lands in Adams county in possession of the defendants under

[1] Reported in 209 Pac. 1081.

a contract for the purchase thereof from the plaintiffs
by the defendant Miller; and also forfeiture of all
sums paid by the defendants upon the purchase price
of the contract. The defendants filed an answer and
cross-complaint, denying generally the allegations of
the complaint upon which the claimed right of forfeit-
ure was rested, and alleging facts upon which they
sought rescission of the contract and recovery of all
sums paid by them to the plaintiffs upon the purchase
price of the contract; the theory of the defendants'
cross-complaint being that they were entitled to a
rescission of the contract because of mutual mistake
of the parties as to certain facts existing at the time
it was entered into. A trial in the superior court of
Adams county upon the merits resulted in a judgment
awarding to the plaintiffs the relief prayed for by them,
and denying to the defendants the relief prayed for
by them. From this disposition of the case, the de-
fendants have appealed to this court.

The controlling facts touching the question of mutual
mistake may be summarized as follows: On October
15, 1915, and for some time prior thereto, respondents
Thiel and wife were the owners of the ranch in ques-
tion. On that day they entered into a contract with
appellant Henry F. Miller for the sale of the ranch to
him. Omitting the description of the land and certain
other portions of the contract, we quote all of the por-
tions thereof necessary to be here noticed, as follows:

"Witnesseth: That the vendors, for and in consid-
eration of the covenants hereinafter contained, to be
performed by the vendee, have agreed to sell and con-
vey and by these presents do sell and convey to the
vendee and the vendee has agreed to buy, and by these
presents does hereby agree to buy from the vendors,
the following-described real property, situated in
Adams County, Washington, to-wit: . . . and to

pay therefor the sum of $30,712.50 in the following manner to-wit; $7,500 upon the ensealing and delivery of this contract; the vendee also to assume, and he hereby agrees to pay, a certain mortgage in the sum of $12,000 due on September 23, 1924, and interest on the same in favor of the Northern Life Insurance Company, the remainder of said consideration, to-wit: the sum of $11,212.50, to be paid in eight equal, annual installments, the first of which shall be due on October 15, 1920, all of said deferred payments to draw interest at the rate of 6% per annum from this date until paid.

"The vendee further agrees to secure the payment of each of the above-mentioned installments and interest on said mortgage indebtedness, by a first crop mortgage upon the crop of grain to be produced and harvested during the year when any such installments and interest shall become due.

"The vendee hereby further agrees  .  .  .  to pay all taxes, ordinary or extraordinary, which may be levied, or assessed against said real property including taxes due in 1920.  .  .  .

"It is further understood and agreed that the vendee may have the privilege of paying all or any number of the above-mentioned deferred installments at any interest paying period.

"Immediately upon the full payment of said purchase price, the vendor shall make, execute and deliver to the vendee a good and sufficient warranty deed to the above-described real property, and shall furnish an abstract showing merchantable title to the above-described premises.

"In the event of the failure of the vendee to comply with the terms of this agreement, the vendors shall be released from all obligations, in law or equity, to convey said property, and the rights of the vendee shall be forfeited, and all payments which may have been made by him on said property shall be considered as damages hereby liquidated, it being expressly understood that time is of the essence of this agreement.

"It is further understood and agreed that the vendee shall be entitled to immediate possession of the above-described property,  .  ."

Soon after the making of this contract, appellants went into possession of the ranch, and thereafter remained in possession thereof until after the rendering of the final judgment against them on January 12, 1922; an order in the nature of a writ of assistance being thereafter issued by the court under which we assume the possession of the ranch was restored to respondents. On October 2, 1919, prior to the making of the contract for the sale of the ranch to Miller, respondents executed a mortgage upon the ranch to Northern Life Insurance Company of Seattle to secure a loan of $12,000. This mortgage duly appeared of record in the auditor's office of Adams county during the time of the negotiations between Thiel and Miller resulting in the contract of sale. This is the mortgage loan referred to in the contract of sale and which Miller agreed to pay. The only language in the mortgage referring to the note evidencing the loan so secured is the following:

"To secure the payment of the principal sum of twelve thousand dollars ($12,000) with interest thereon. Both principal and interest being payable in United States gold coin of the present standard of weight and fineness, or its equivalent, as evidenced by one principal note executed by the mortgagors to the mortgagee of even date herewith."

This, it will be noticed, does not disclose when the principal of the loan was to be paid, nor whether in one lump sum or in installments, nor the agreed rate of interest. The note evidencing the loan was, at the time of the negotiations between Thiel and Miller for the purchase of the ranch, in the hands of the mortgagee insurance company at Seattle, and hence not readily accessible for inspection, since the negotiations were being carried on between the parties in Adams county. The evidence we think calls for the conclusion:

that Thiel did not then know or remember the terms of the note as to installments or rate of interest and gave Miller to so understand, this want of knowledge or remembrance by Thiel evidently being because the negotiations for and the making of the loan were left by him entirely in the hands of his banker át Ritzville, he and his wife having signed the mortgage and note as directed by their banker, giving little consideration to its terms other than as to the amount; and that Miller caused the record of the mortgage in the auditor's office to be inspected with a view of ascertaining the exact terms of the loan, which record, as we have seen, failed to furnish such information, other than that it was for $12,000. Miller testified that Thiel said that the rate of interest was six per cent, but this Thiel positively denies and is corroborated in such denial by other credible evidence. While the trial judge did not make any formal findings, it is plain from his observations made in announcing his decision, embodied in the statement of facts, that he entertained this view of the facts as to the lack of remembrance and knowledge on the part of Thiel and Miller of the conditions of the loan as to installments and interest, and that they proceeded to consummate the contract of sale in view of this conscious want of knowledge. The real facts are that, by the terms of the note evidencing the twelve thousand dollar loan secured by the mortgage, it was payable, $500 on October 1, 1920; $500 on October 1, 1921; $500 on October 1, 1922; $500 on October 1, 1923; and $10,000 on October 1, 1924; with interest payable annually at the rate of seven per cent per annum.

The principal contention here made in behalf of appellants is that there was a mutual mistake of the parties as to the conditions of the loan secured by

the mortgage such as to entitle appellants to rescind the sale contract. We cannot agree with this contention. There was a want of remembrance and knowledge of the conditions of the loan secured by the mortgage, which in a sense may be said to have been mutual; but it was a conscious want of remembrance and knowledge, in face of which the contract was voluntarily entered into. Miller seemingly did have some desire to learn the exact terms of the loan, in addition to the total amount thereof, which he was to assume; but that he did not learn the terms of the loan and that he knew he was ignorant thereof, except as to its total amount and its extreme limit as to time, and that he voluntarily entered into the contract of purchase in the face of his conscious ignorance of the conditions of the loan, seems well established by the evidence. This, we think, is not in law such mistake as would entitle appellants to rescission of the contract. The law applicable to such facts is admirably stated in 2 Pomeroy's Equity Jurisprudence (4th ed.), § 855, as follows:

"When parties have entered into a contract or arrangement based upon uncertain or contingent events, purposely as a compromise of doubtful claims arising from them, and where parties have knowingly entered into a speculative contract or transaction,—one in which they intentionally speculated as to the result,— and there is in either case an absence of bad faith, violation of confidence, misrepresentation, concealment, and other inequitable conduct mentioned in a former paragraph, if the facts upon which such agreement or transaction was founded, or the event of the agreement itself, turn out very different from what was expected or anticipated, this error, miscalculation, or disappointment, although relating to matters of fact, and not of law, is not such a mistake, within the meaning of the equitable doctrine, as entitles the disappointed party to any relief either by way of canceling the contract

and rescinding the transaction, or of defense to a suit brought for its enforcement.''

In *Kowalke v. Milwaukee Electric Railway & Light Co.,* 103 Wis. 472, 79 N. W. 762, Justice Dodge, speaking for the court, makes the following very pertinent observations touching the subject of mutual mistake and what constitutes such a mistake in law:

''The most philosophical definition we have found is that presented by Pomeroy (Eq. Jur. § 839): '*An unconscious ignorance or forgetfulness of the existence or nonexistence of a fact, past or present, material to the contract.*' This definition contains several elements, each of which, as above suggested, must be explained and qualified in its practical application. Thus, the ignorance must be unconscious; that is, not a mental state or conscious want of knowledge whether a fact which may or may not exist does so. Kerr, Fraud & M. p. 432. This idea is involved in, and furnishes a reason for, the exception pointed out by Dixon, C. J., in *Hurd v. Hall,* 12 Wis. 112, 127, on authority of *Kelly v. Solari,* 9 Mees. & W. 54, viz: Where a party enters into a contract, ignorant of a fact, but meaning to waive all inquiry into it, or waives an investigation after his attention has been called to it, he is not in mistake, in the legal sense. These limitations are predicated upon common experience, that, if people contract under such circumstances, they usually intend to abide the resolution either way of the known uncertainty, and have insisted on and received consideration for taking that chance.''

This is not a case of mistake of either party in erroneously consciously assuming as a fact that which was not a fact, as in *Kelsey v. Mackay,* 65 Wash. 116, 117 Pac. 714; *Stahl v. Schwartz,* 67 Wash. 25, 120 Pac. 856; and *Lindeberg v. Murray,* 117 Wash. 483, 201 Pac. 759; but it was a case of all the parties voluntarily entering into a contract in the face of their conscious, present want of knowledge of facts, which they all then manifestly concluded would not influence their

action or induce them to refrain from entering into the contract, whatever the facts might be. We are of the opinion that there is no such mutual mistake here shown as to entitle appellants to a rescission of the contract for the purchase of the land and thereby deprive respondents of their rights in accordance with the terms of the contract. We have not deemed it necessary to discuss any question of laches or ratification on the part of appellants. We may observe, however, that, regardless of what might be our opinion upon these questions, the evidence which was introduced touching them does lend support to the facts above summarized touching the question of mutual mistake.

Appellants not having any right of rescission of the contract, and it being in full force and effect as to all of its terms, we see no escape from affirming the judgment of the trial court awarding to respondents forfeiture of appellants' rights in the ranch, and also forfeiture, as liquidated damages, of all that portion of the purchase price they have paid to appellants; since it seems to us that the trial court was fully justified by the evidence in concluding that appellants had failed to comply with the terms of the contract as written, in substantial respects, and had been given by respondents fair opportunity to fully comply therewith before they elected to exercise their right of forfeiture and notified appellants accordingly. Indeed, counsel for appellants does not seem to seriously contend but that the conditions of the contract as written have not been timely complied with by them. This record, we may further observe, renders it fairly plain that appellants do not intend or desire to further comply with the terms of the contract as written.

Counsel for appellants contend that the trial court erred to their prejudice in refusing to grant them a

trial by jury. This contention is presented to us practically without argument, other than the seeming suggestion that the case as presented by respondents' complaint was in the nature of ejectment. However that may be, it is clear that, by appellants' cross-complaint, they, in any event, clearly made the whole controversy one of equitable cognizance determinable by the court without a jury. The nature of an action as to its being one at law or in equity is determinable, not by the complaint alone, but by a consideration of all of the issues raised by all of the pleadings. *Lindley v. Mc-Glauflin,* 57 Wash. 581, 107 Pac. 355; *Nolan v. Pacific Warehouse Co.,* 67 Wash. 173, 121 Pac. 451. And an action to rescind a contract seeking the relief here sought by appellants by their cross-complaint is plainly of equitable cognizance. *Reser v. Labude,* 103 Wash. 228, 173 Pac. 1093. Thus appellants, in any event, converted the action into one of equity, triable without a jury, even if it be conceded that as originally commenced it might be regarded as an action at law. We are quite clear that appellants were not entitled to a trial by jury.

It is finally contended in appellants' behalf that the trial court erred to their prejudice in issuing an order at the instance of counsel for respondents in the nature of a writ of assistance looking to the restoration to them of the possession of the ranch. The argument in support of this contention, somewhat inconsistent with that advanced in support of appellants' claimed right of trial by jury, seems to be that the action as commenced by respondents was not a seeking by respondents to recover possession of the ranch. It is true that the prayer of respondents' complaint does not in terms ask for recovery of possession of the ranch; and the same may be said of the judgment that

was finally rendered in the case; but it is plain that the allegations of the complaint, if true, were such as to entitle respondents to recovery of possession, and the prayer concluded with the words, "that they have such other and further relief as to the court seems meet and equitable." The judgment, after declaring a cancellation of the contract and the forfeiture of appellants' rights thereunder, was also: "that plaintiffs' title in and to the above described real estate be, and the same is hereby quieted as against any right, title, claim, lien or equity of the defendants and of any and all persons claiming by, through or under the said defendants, or either of them." Viewing the whole record, it seems plain to us that the question of respondents' right of possession was in effect drawn in question by the pleadings and finally adjudicated by the judgment as against appellants. It follows, we think, that the court did not err in issuing its order in the nature of a writ of assistance looking to such enforcement of the judgment.

The judgment is affirmed.

BRIDGES, FULLERTON, TOLMAN, and MITCHELL, JJ., concur.