[No. 23320. Department One. January 12, 1932.]

HARRY A. INGRAHAM *et al., Respondents,* v. ASSOCIATED OIL COMPANY *et al., Appellants.*[1]

[1]Reported in 6 P. (2d) 645.

306

*McAulay & Freece,* for appellants.

*LaBerge, Cheney & Hutcheson,* for respondents.

BEELER, J.—The respondents, Ingraham and wife, own a fruit ranch near the town of Zillah, in Yakima county, and brought this action to recover damages which they claim they sustained as a result of spraying their peach orchard with "Avon Spray Emulsion," an oil spray manufactured and produced by the appellant Associated Oil Company. They alleged in their complaint: That, at the time the appellants sold the oil spray, each of them expressly and impliedly warranted and guaranteed that the spray was suitable for the purposes for which it was intended, namely, to kill aphis pests on fruit trees, but that it would not injure the trees nor the fruit; that the spray was not suitable for the purposes for which it was intended in that it

was old, deteriorated and defective, and the elements composing the spray had broken down, thereby freeing the oil; and when the spray was applied, it killed some of the trees and injured many others, and damaged the growing crops; that the spray failed to kill the aphis pests.

The appellants filed separate answers. The appellant Decoto Bros. denied all material allegations in the respondents' complaint, but admitted having sold the oil spray to them, and by cross-complaint alleged that the respondents were indebted to them in the sum of $345.84, the sale price of the oil spray.

The appellant Associated Oil Company likewise denied all material allegations of the complaint, and specifically denied that it had sold the Avon spray to the respondents. It set up three affirmative defenses: First, that, at the time of the sale of the Avon spray, there existed a custom throughout the Yakima valley under which dealers handling similar products did not warrant them, either as to quality or suitability, for the purposes for which they were intended, or as to the effect upon the fruit or the trees to which the spray might be applied, or as to its effect upon pests; second, that, at the time the spray was sold and delivered to the respondents, there appeared upon each of the containers a disclaimer of warranty, express or implied, of all liability in the use of the product; third, that, if the Avon spray was broken down, that fact was unknown to the appellants, but was known, or by the exercise of reasonable care could have been discovered by the respondents, and that, if any damage resulted by the use of the spray, it was due to their own negligence. The reply placed in issue all these affirmative allegations.

Upon these issues, the cause was tried to the court and a jury, and resulted in a verdict in favor of the

respondents and against the Associated Oil Company in the sum of $2,193.85, and a verdict in favor of the appellant Decoto Bros., on their cross-complaint, in the sum of $237.84 against the respondents. The appellants' motions for judgment n. o. v., or, in the alternative, for a new trial, being overruled, judgment was entered on the verdict and this appeal followed.

The appellants first contend that the trial court erred in overruling their motions for judgment of nonsuit at the close of respondents' case; in overruling their motions for a directed verdict at the close of all the evidence, and in denying their motions for judgment in their favor notwithstanding the verdict. These assignments raise the question whether the evidence supports the verdict.

Throughout the trial the oil company maintained that the evidence was insufficient to take the case to the jury on the question as to whether this spray was broken down or injurious to trees; that, if the orchard was damaged, it was due to the respondents' own carelessness in applying too much spray to the trees; and that, if the spray was, in fact, defective and dangerous, such fact was known, or by the exercise of reasonable care could have been discovered by the respondents; that the sale of the oil spray was made by the Decoto Bros., and that it did not sell the oil spray to the respondents, and hence there was no warranty either express or implied on its part.

These were issues to be determined by the triers of the facts. The jury were warranted in finding that the appellant, The Associated Oil Company, is engaged in the manufacture and sale of oil products, including the Avon Spray Emulsion, which is used for spraying orchards; that the appellant Decoto Bros. was an agent of the oil company at Yakima; that in addition to the local agent, the oil company employed

a Mr. Campbell as an oil spray expert to assist its sales organization in handling and disposing of its spray oils; that, in September, 1928, and again in March, 1929, Campbell and one of the Decoto Bros. solicited the respondents to purchase and use the Avon Spray Emulsion for the protection of their orchard; that the respondent Ingraham had never before used the Avon spray, but had heard that its use was dangerous, and hence made special inquiry of Mr. Campbell both in September and in March whether the spray would damage the trees or the fruit, and on both occasions was assured by Campbell that it would not, but that the spray would kill aphis pests.

Relying upon these representations, the respondents ordered the oil spray. The first delivery was made in the latter part of March, 1929, and consisted of fifteen drums, each drum containing thirty gallons of spray. This delivery was made from a local warehouse at Yakima with one of the oil company's trucks. Two subsequent deliveries were made about one week later and after nearly all of the first shipment had been used. These subsequent deliveries were apparently of a newer and cleaner grade of oil, and inasmuch as no damage ensued from the use of these shipments they may be dismissed without further consideration.

When the respondent Ingraham opened the drums containing the first shipment, he noticed a quantity of free oil floating on top, and, being unfamiliar with the use of the oil spray, took the precaution to telephone to the Yakima office of the Associated Oil Company and reported to some person in charge thereof as to the condition which he discovered. In response he was told to stir the mixture and it would then be fit and safe for use. This he did, and then applied the spray to the trees. Because of its broken down condition—

the separation of the oil from the other ingredients—the spray when used by respondents destroyed some of their peach trees and seriously injured others.

The original complaint was framed on the theory of both an express and implied warranty. During the course of the trial, the court withdrew from the jury all evidence pertaining to an implied warranty on the spray on the part of the Associated Oil Company, and submitted to them only the question whether an express warranty had been made by that company. This issue was clearly defined by the court in his instructions; and the jury, as reflected by its verdict, found that such a warranty had in fact been made, and that it had been broken, and that the breach resulted in material damage to the respondents' orchard. While there was a sharp conflict in the evidence on this question, there is ample evidence to sustain the verdict, and hence we would not be justified in setting it aside.

■ The appellant oil company next contends that it is not liable by reason of a disclaimer of warranty. Much stress is placed upon the fact that, on the fifteen drums of spray first delivered, there was pasted a notice disclaiming any warranty, either express or implied, "for any injury resulting from handling and using the product."

If, as the jury found, the sale of the spray was made under an express warranty of fitness, no subsequent disclaimer could overcome such express warranty, unless assented to by the respondents. The respondents denied all knowledge of this disclaimer, and testified that it had never been called to their attention by the appellants. On the other hand, the appellants, in part at least, relied upon this alleged disclaimer as evidence in support of their contention that no express warranty had been made at the time of the sale, and we must assume that the jury gave it proper consider-

ation. The trial court instructed the jury, in part, as follows:

"In this connection you should, of course, consider the evidence as to specific disclaimer and as to the general custom in determining whether or not there was an express and specific warranty on the part of the defendants."

█ Error is next assigned upon the admission in evidence of a conversation between the respondent Mr. Ingraham and some unknown person in the office of the Associated Oil Company in Yakima, on April 1, 1929. The respondent testified that he called the telephone number of the appellant oil company, that he secured the proper telephone connection, and thereupon inquired for Mr. Campbell, the spray expert; and on being informed that he was not in the office, inquired for some one who could advise him concerning the condition and fitness of the oil spray which had been delivered to him. Thereupon, some person took the telephone and advised the respondent that the spray needed only to be stirred up in order to be fit and safe for use.

The telephone conversation was not with a *particular individual,* but with the oil company's office or place of business, and hence the testimony was admissible, although the respondent was unable to identify the voice of the person with whom he held the conversation.

"The rule requiring the identity of the speaker to be established is subject to a well recognized exception to the effect that, where the witness called the office of a party on the telephone, testimony as to a conversation had with a person answering the telephone and purporting to do so on behalf of the party is competent, although the witness did not recognize the voice of the person who spoke and is unable to identify the speaker, for the reason that one who answers a telephone call

from the place of business of the person called for, and undertakes to respond as his agent, is presumed to have authority to speak for him in respect to the general business there carried on and conducted.'' 22 C. J. 193.

We have heretofore held that evidence of a conversation over the telephone is admissible against a defendant without identifying the voice of the party who answered the call, where such person assured the plaintiff that it was the defendant's place of business and gave information material to the issues.

''The respondent was allowed to testify as to certain telephone conversations with someone whom he supposed was in the appellant's office. Respondent could not identify the voice of the person with whom he talked, but the testimony shows that he obtained the appellant's telephone number from the directory, called that number, inquired for appellant, was answered affirmatively that it was appellant's place of business and had a conversation in regard to the produce, in which he was told that the Japanese would be sent out to see him, and that thereafter the Japanese did come to his place of business. It would seem that, under such circumstances, the telephone conversations were properly admissible in evidence. It is not necessary that the voice of the party answering be identified, and it is only necessary, to render a telephone conversation admissible, that the same rule be applied to it as to the admission of oral statements made in ordinary conversations.'' *Beeler v. Pacific Fruit & Produce Co.*, 133 Wash. 116, 233 Pac. 4.

To the same effect see: *Wolfe v. Missouri P. R. Co.*, 97 Mo. 473, 11 S. W. 49, 3 L. R. A. 539, 10 Am. St. Rep. 331; and *Godair v. Ham National Bank*, 225 Ill. 572, 80 N. E. 407, 116 Am. St. 172.

 Error is next assigned on the receiving in evidence over the objection of appellants of certain admissions made by Frazier and Campbell, representatives of the appellant oil company, at the time they

examined the respondents' orchard for the purpose of ascertaining the nature and extent of the damage. The purpose of examining and inspecting the orchard was to facilitate and bring about a compromise and settlement, which apparently was then desired by all of the parties concerned.

The general rule is that admissions made during or in consequence of an offer of compromise are not admissible in evidence. Where, however, distinct facts are admitted during the progress of the negotiations, they are regarded as statements of independent facts and are admissible against the party making them. 2 Wigmore on Evidence, § 1061; Elliott on Evidence, § 240; *Moore v. Stetson Machine Works,* 110 Wash. 649, 188 Pac. 769. The admissions here complained of were that the injuries to respondents' trees were caused by oil spray burns; that the appellant Associated Oil Company was responsible therefor and would make good the damage. Under the circumstances, these were statements of independent facts, and hence were admissible in evidence against the appellant oil company.

"On grounds of public policy an offer to compromise or settle a disputed claim will not be received as an admission of the party making the offer. But if a statement forming a part of or connected with an offer of a compromise is an admission of an independent fact pertinent to the question in issue, evidence of such a statement is admissible." (Note) *McNeer v. Norfleet,* 113 Miss. 611, 74 South. 577, Ann. Cas. 1918E 440.

Error is next assigned upon the court's instructions concerning the measure of damages. The jury were told that, if they found for the respondents, they should, in assessing the damages, estimate the difference, if any, in the market value of the orchard before and after the injury complained of; and, in

estimating the market value of the orchard, they should take into consideration the value of the crop which the trees would have produced during the current season had they not been injured, less the cost of producing and harvesting the crop. These instructions correctly defined the law relating to the proper measure of damages. The instruction on this phase of the case, while not as explicit as it might have been, was sufficiently clear to avoid any confusion in the minds of the jury.

Other instructions discussed in the briefs include several that were given and fourteen that were requested by the appellants and refused by the court. We find it unnecessary to analyze and discuss them separately. The instructions that were given were comprehensive and, in our opinion, defined the law applicable to the case with fairness to both parties, while those that were refused consisted in part of duplications of what in effect was given, otherwise they were not correct statements of the law applicable to the case.

Finally, the appellants contend that the court erred in entering judgment in favor of the appellant Decoto Bros. on their cross-complaint in the sum of $237.84, instead of the full amount sued for, $345.84. The difference between these amounts, the sum of $108, represents the purchase price of the first delivery of the Avon spray. Apparently, the jury believed that that delivery was worthless, and hence merely deducted the purchase price of that particular shipment. This was proper.

Finding no error in the record, the judgment appealed from is affirmed.

TOLMAN, C. J., HERMAN, and PARKER, JJ., concur.

MITCHELL, J., concurs in the result.