## Walters v. Louisville Water Co.

Feb. 1, 1944.

Ollie James Cohen for appellant.

J. Verser Conner for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

George Walters sued the Louisville Water Company for damages for personal injuries received when he stepped on a loose water cap maintained by the water company. Walters was an employee of Ed Korb, an interior decorator. He testified that on November 5, 1941, he was sent in a truck to 2607 West Walnut street in Louisville where a fellow employee was working. When returning from the house to his truck with a bucket of paint he stepped on the cap of a water meter vault or well, located partly in the sidewalk, and the cap titled causing his left leg to go down into the vault. On the trial of the case the jury returned a verdict for the defendant. The sole ground urged by the plaintiff for reversal of the judgment is alleged error of the court in excluding evidence offered by him as follows: (1) The testimony of Essie Carpenter that she called the office of the water company on the telephone several days before appellant was injured and notified the person who answered the telephone that the meter cap located at 2607 West Walnut street was unlocked; (2) the testimony of Dr. Leon Solomon to the effect that Walters had a stricture as a result of the accident.

Essie Carpenter and her husband, Ulysses Carpenter, lived at 2605 West Walnut street, and the water meter vault in front of their house is four or five feet from the vault on the adjoining lot where appellant was injured. On October 31, 1941, Ulysses Carpenter stepped on the meter cap in front of 2607 West Walnut street as he was returning from work. The cap tilted and he was slightly injured. Essie Carpenter testified that on

the following day she called the office of the Louisville Water Company on the telephone and a woman answered saying: ''Water Company.'' The witness told her the water meter cap in front of 2607 West Walnut street was unlocked, and the woman said: ''Just wait a minute.'' The next voice the witness heard was a man's voice and she repeated the information to him. According to the witness, he said: ''They would O. K. it.'' The witness was unable to identify either of the persons with whom she talked. Most of this testimony was heard out of the presence of the jury. The court ruled that all of the testimony of Essie Carpenter concerning the telephone conversation was inadmissible, and admonished the jury not to consider any testimony which they heard on the subject.

The general rule is that testimony as to the contents of a telephone conversation is not admissible unless there is some proof of the identity of the person with whom the witness talked, but the rule is subject to the well-recognized exception that when a telephone call is made to a business office over a line maintained by it for business purposes, testimony as to a conversation with the person answering the telephone is admissible without further proof of his identity, the presumption being indulged that such person, if he assumes to have authority to receive the message, does have such authority in the absence of proof to the contrary. Bradley v. Illinois Central R. Co., 291 Ky. 25, 163 S. W. (2d) 26; Theisen v. Detroit Taxicab & Transfer Co., 200, Mich. 136, 166 N. W. 901, L. R. A. 1918D, 715; Alabama Power Co. v. Jones, 212 Ala. 206, 101 So. 898; Lord v. Lowell Institution for Savings, 304 Mass. 212, 23 N. E. (2d) 101; Rowan v. State, 175 Md. 547, 3 A. (2d) 753; Ingraham v. Associated Oil Co., 166 Wash. 305, 6 P. (2d) 645; Wigmore on Evidence, 3d Ed., volume 7, section 2155. The rule is said to be based on apparent necessity in view of the constant use of telephones. The telephone has been in common use for more than sixty years, and its use has now become almost universal. Practically every business office has a telephone, and uses it frequently in transacting business. As said in City of Pawhuska v. Crutchfield, 147 Okl. 4, 293 P. 1095, 1097: ''Those who install telephones in their places of business impliedly invite the business world to use that means of communication with them with respect to the business there carried on, and the plain inference is that

they authorize communications made over the telephone in ordinary business transactions.'' The fact that a telephonic conversation is easily manufactured, merely affects the weight, not the admissibility, of such evidence. We think the testimony of Essie Carpenter was admissible, and that the court erred in rejecting it. The probative force of the evidence was for the jury.

Dr. Leon Solomon testified at great length concerning the nature of appellant's injuries. He testified that appellant was suffering from a traumatic stricture of the urethral canal and that the condition was permanent. The court excluded all of the physician's testimony concerning the stricture on the ground that there was no allegation in the petition that appellant had suffered a stricture. The petition contained this allegation: ''Plaintiff * * * was caused thereby to be thrown into said well the length of his left leg, lastingly and permanently injuring the plaintiff in and about his left ankle, * * * urethra, bladder, scrotum, and body.'' The language of the petition manifestly is broad enough to include a stricture resulting from an injury to the urethra and to render admissible the testimony of Dr. Solomon. ''The plaintiff can introduce evidence concerning and recover damages not only for the specific injury complained of, but for such other injuries as might reasonably and naturally be presumed to result from it without pointing out such injuries.'' Louisville R. Co. v. Gaugh, 133 Ky. 467, 118 S. W. 276, 278. Whether or not the error of the court in excluding the testimony of Dr. Solomon would, standing alone, authorize a reversal in view of the fact that the rejected evidence went only to the amount of damages and the verdict was for the defendant need not be decided, since the judgment must be reversed on the first ground discussed, but on another trial the evidence should be admitted.

The judgment is reversed, with directions to grant appellant a new trial.