[No. 140-3.    Division Three.    December 16, 1970.]

ANN D. DAVEY, *Respondent*, v. DOROTHY M. BROWNSON, *Individually and as Executrix, Appellant.*

*Del Cary Smith, Sr.* (of *Smith, Smith & Smith*), for appellant.

*Robert A. Southwell* (of *Malott, Keith & Southwell*) and *Ross Worthington* (of *Worthington & Erickson*), for respondent.

GREEN, J.—Plaintiff, Ann D. Davey, a purchaser, brought this action to rescind a real estate contract covering the sale of the Bluebird Motel in Spokane. Originally, the complaint alleged fraud and misrepresentation, but was later amended to include mutual mistake. The trial court granted rescission based upon mutual mistake; ordered the defendant vendor, Dorothy M. Brownson, to return the downpayment of $12,898.90, permitting her to retain the install-

ment payments; and authorized defendants, Victor Robisch and A. A. Johns Realty Company, to retain $2,793 paid on their real estate commission, but canceled the balance of $4,706.71. Defendant Brownson appeals.

The motel consists of 26 units, a service station, garage, living quarters and an office. Lynn and Dorothy Brownson purchased the motel in 1960 on contract; it was subject to a prior, existing contract. Both contracts were unpaid at the time of the sale herein. In 1966, Brownsons listed the motel for sale with Johns Realty. Mr. Brownson operated the Bluebird Motel. They also owned another motel that was managed by Mrs. Brownson. In September 1967, Mr. Brownson died. Thereafter, the Bluebird Motel was operated by a hired manager who was deceased at the time of trial.

In January 1968, plaintiff, looking for some type of family business, answered an ad in the Spokesman-Review. It turned out to be the Bluebird Motel in which the plaintiff and her family had stayed on a number of occasions. They dealt with Robisch of Johns Realty. On February 28, 1968, plaintiff signed an earnest money agreement offering to purchase the motel for $125,000; defendant signed the agreement on March 5, 1968. On July 15, 1968, plaintiff and defendant executed a real estate contract and security agreement covering the motel and its contents for a purchase price of $125,000, of which $12,898.90 was paid. The balance was payable in installments commencing September 1, 1968. The contract gave plaintiff possession on July 15, 1968.

In September 1968, plaintiff and her husband were about to repair a loosened tile in a shower stall at the request of a motel guest. They discovered other tiles were also loose due to moisture and when they tried to replace them found it impossible because of rotten wood. They notified Robisch and later sought legal advice. In October 1968, at plaintiff's request, William A. Senske, a pest control expert, examined the premises and discovered extensive termite infestation. The steps necessary to correct this situation were detailed

by him at trial and included substantial structural repair.

Plaintiff made installment payments on the contract of $1,000 about August 1; $1,250 on September 1; and $1,250 on October 1. No payments were made after Senske's initial examination. On November 15, 1968, plaintiff and defendant received notice of forfeiture of a prior contract unless delinquencies totaling about $1,500 were paid within 30 days. On November 19, 1968, defendant notified plaintiff of her election to forfeit the July 15, 1968 contract unless the delinquent November 1, 1968 payment was paid within 30 days. On December 10, 1968, plaintiff commenced this action for rescission. Since no payments were made by either plaintiff or defendant upon the prior contract, the same was forfeited. At the time of trial, neither plaintiff nor defendant had possession of the motel.

The trial court, in essence, found the parties contracted for the purchase and sale of a motel in sound condition, free of latent defects such as termite infestation; the defendant would not have sold nor plaintiff purchased the motel if the true condition had been known; all parties were operating under a mutual mistake and without full knowledge of the actual condition of the property; plaintiff was not negligent in failing to discover the true condition since only an expert could have done so; defendant was not guilty of any fraud or intentional misleading of plaintiff, although defendant had implied notice of dry rot; the latent defect of termite infestation requiring structural repairs went to the essence of the contract—a motel in a basically sound condition; and the contract should be canceled and the loss apportioned between the parties. The first 13 errors assigned by defendant are directed to these findings and conclusions, contending they are not in accordance with the evidence or the law.

It does not appear from the record that plaintiff and defendant ever discussed the motel property between themselves. Robisch was defendant's agent throughout the transaction. Between November 1967 and May 30, 1968, plaintiff and her family spent about 30 days as residents of

the motel, occupying six different units. There is a conflict in the evidence over whether plaintiff saw the units, other than the ones in which she stayed, prior to completion of the sale. Robisch testified when plaintiff took possession on July 15, 1968, the motel was in fair-to-good condition; it needed a lot of cleaning up and painting; a few of the plastic tiles in the shower stalls had come off; he recommended plaintiff put metal shower stalls in the units as they would be cheaper than tile repair and easier to maintain; there were no visible structural defects in the motel except some bricks knocked off by cars backing into them; plaintiff understood the motel was in fair-to-good condition but needed upgrading in these particulars; he sold other motels, never before encountering termites; and he was unaware of the termite condition at the time of the sale to plaintiff.

The contract contained the following provision:

The buyer realizes the condition of said Bluebird Motel and further agrees to upgrade the condition of the buildings within a reasonable time to the best of their ability. The buyer has examined the books and records of said motel and has made this purchase on the basis of her own investigation and not on the basis of any representations of the seller or any agent of the seller.

It seems evident, as the trial court concluded, the parties both bargained for a motel in fair-to-good condition and structurally sound. The contemplated upgrading was in terms of cleaning, painting and minor repairs. It is clear the parties were mistaken when it was discovered the motel was extensively infested with termites. Senske, the expert, testified termite infestation would not be discovered by a layman on reasonable inspection because of its concealment. Since this condition went to the very heart of the subject matter of the transaction, we believe the trial court properly granted rescission.

In *Lindeberg v. Murray*, 117 Wash. 483, 495, 201 P. 759 (1921), the court said:

> We think it is elementary that, where there is a clear *bona fide* mistake regarding material facts, without culpable negligence on the part of the person complaining, the contract may be avoided and equity will decree a rescission. We take it that the true test in cases involving mutual mistake of fact is whether the contract would have been entered into had there been no mistake. *Stahl v. Schwartz*, 67 Wash. 25, 120 Pac. 856; 10 R. C. L. 296-299. We are clear that there was such a mistake here.

Rescission for mutual mistake is recognized in numerous authorities: Restatement of Contracts § 502 (1962); 55 Am. Jur. *Vendor and Purchaser* § 48 (1946); 13 Am. Jur. 2d *Cancellation of Instruments* § 33 (1964); 17 Am. Jur. 2d *Contracts* § 143 (1964); 17A C.J.S. *Contracts* § 418(2) (1963); 91 C.J.S. *Vendor and Purchaser* § 51(a) (1955); 3 A. Corbin, Contracts § 613 (1960); 91 C.J.S. *Vendor and Purchaser* § 156 (1955); 6 Williston, Contracts § 893A (3d ed. 1962); *Ross v. Harding*, 64 Wn.2d 231, 239, 391 P.2d 526 (1964); *cf. Thiel v. Miller*, 122 Wash. 52, 58, 209 P. 1081, 26 A.L.R. 523 (1922). The evidence leaves no doubt plaintiff would not have purchased the motel had she known of the termite condition.

Because neither plaintiff nor defendant had knowledge of the termite condition when the sale agreements were executed, it is defendant's position the doctrine of caveat emptor applies to bar rescission. Defendant relies upon *Hughes v. Stusser*, 68 Wn.2d 707, 415 P.2d 89 (1966), wherein the court said at page 712:

> [C]aveat emptor, means nothing more than saying that the risks of latent defects in residences ought to fall on the purchaser rather than the vendor *where those defects are unknown to the vendor*.

In *Hughes*, a residence was sold for cash. Shortly thereafter, the purchaser discovered termites and brought an action for damages. The theory was fraudulent misrepresentation and concealment. The trial court ruled on a challenge to the sufficiency of the evidence that fraud and concealment had not been proved by clear, cogent and convincing evidence and dismissed the complaint. This was

affirmed on appeal. The language cited by defendants from *Hughes* is dictum since the purchaser in *Hughes* failed in its burden to prove fraud and concealment.

The instant case is distinguishable from *Hughes* because here the plaintiff seeks rescission based on mutual mistake. The elements of mutual mistake, *Lindeberg v. Murray, supra,* are different than the elements of fraud. *Markov v. ABC Transfer & Storage Co.,* 76 Wn.2d 388, 395, 457 P.2d 535 (1969). As in *Hughes,* plaintiff in this case was unable to prove the elements of fraud; rescission for this reason was denied. However, the trial court properly concluded both plaintiff and defendant dealt under a mutual mistake as to the actual condition of the property since both considered it to be in fair-to-good condition, free of a need for structural repair. It seems clear from the testimony of Robisch and plaintiff that the requirement to upgrade the property did not include the performance of major structural repairs within a matter of weeks after taking possession. Since the termite infestation went to the very heart, the sine qua non or the essence of the transaction, it was proper to grant rescission for mutual mistake.

Defendant contends if the instant agreement can be rescinded, then any contract can be set aside under a set of circumstances rendering a building no longer attractive to a purchaser. To the contrary, we hold a purchaser is bound by facts a reasonable investigation would normally disclose. However, in the instant case it is clear a reasonable investigation by a layman would not have disclosed termite infestation, nor does the record show that a purchaser making a reasonable investigation should employ an expert to investigate the premises for termites. Consequently, the contention of defendant is without merit.

Defendant also argues that rescission cannot be granted in this case because the parties cannot be restored to the status quo, the motel having been forfeited by prior contract owners. We disagree. Not only does the record show the prior contract owners gave notice of forfeiture, but that defendant also gave notice of forfeiture to plaintiff. Plain-

tiff sought to rescind the transaction. It is obvious that plaintiff could not rescind the transaction and still make the payments due. *Webb v. Stephenson,* 11 Wash. 342, 39 P. 952 (1895); *Whatcom Builders Supply Co. v. H. D. Fowler, Inc.,* 1 Wn. App. 665, 463 P.2d 232 (1969). Defendant having elected to forfeit and having knowledge of the action to rescind was in a position to have prevented forfeiture by the prior contract owner. Defendant argues she was misled into not preventing the forfeiture of the prior contract because plaintiff originally based her action in fraud that defendant believed could not be proved. When plaintiff amended her complaint to add mutual mistake, defendant contends it was too late to prevent the forfeiture. The forfeiture was therefore caused by action of plaintiff. It is well known amendments to pleadings are frequently made during the course of litigation and the rules so provide. CR 15. In these circumstances it can hardly be contended defendant was misled. Defendant's contention is without merit.

Defendant also contends there is no implied warranty in the sale of real estate. Citing 1 Black, Rescission and Cancellation, 412, 425 (1929); 3 Pomeroy, Equity Jurisprudence § 856(a) (5th ed. 1941); 55 Am. Jur. *Vendor and Purchaser* § 368 (1946); *Steiber v. Palumbo,* 219 Ore. 479, 347 P.2d 978, 78 A.L.R.2d 440 (1959); *Fain v. Nelson,* 57 Wn.2d 217, 356 P.2d 302 (1960); *Dennison v. Harden,* 29 Wn.2d 243, 186 P.2d 908 (1947). Plaintiff's theory was not based upon implied warranty, nor is it the basis of the trial court's decision. Therefore, the rule urged by defendant is not applicable.

■ Finally, defendant contends the trial court erred in allowing Johns Realty to retain $2,793 received as commission on the sale. Briefs filed herein were never served upon the defendant realtors, nor were they named as respondents on the appellate documents. The notice of appeal was directed to "The Above-named Plaintiff [Ann D. Davey], and to Ross Worthington and Robert A. Southwell, your Attorneys." In these circumstances, the defendant realtors are not properly before this court. Therefore, the error

cannot be considered. *Gamble v. Alder Group Mining & Smelting Co.,* 23 Wn.2d 91, 159 P.2d 624 (1945).

Judgment is affirmed.

EVANS, C. J., and MUNSON, J., concur.

Petition for rehearing denied February 5, 1971.

Review denied by Supreme Court March 2, 1971.