[No. 2147–3.   Division Three.   November 18, 1977.]

V. M. CHILDERS, ET AL, *Respondents*, v. DAN
ALEXANDER, ET AL, *Appellants*.

*Leo C. Kendrick* and *Gavin, Robinson, Kendrick, Redman & Mays,* for appellants.

*Arthur G. Bingman* and *Blechschmidt, Bingman & Maxwell, Inc.,* for respondents.

GREEN, J.—Plaintiffs Childers brought this action to recover upon a promissory note given by the defendants Alexander in partial payment for the purchase of land in Yakima County. The total purchase price was $44,000. Defendants counterclaimed for reformation to reduce the purchase price by $9,000 for alleged damages caused by chemical agents on a small portion of the land. Following trial to the court, judgment was entered for plaintiffs. Defendants appeal.

The sole question is whether the court erred in refusing to grant the reformation. We affirm.

This issue is presented solely upon the findings of fact entered by the trial court. Since no error is assigned to the findings, they become verities on appeal and contain the pertinent facts:

5. At the time of sale, plaintiffs assumed the defendants would use the land to grow hops. Defendants were planning to grow hops thereon. Neither party had any knowledge of any problem with the land caused by herbicides or other chemical residue. Defendant did not obtain any chemical residue reports for the land, except for growing nutrients, until after hops were planted.
6. Some unknown growth regulator chemical caused damage to seven acres of the hops planted by defendant. Other reasons proposed to the Court as the cause of said damage include high alkalinity, irrigation practices, excess fertilizer, bad root plantings, and chemical spray drift. The Court does not feel they were probabilities.
7. Excess 2–4D applications were made to the soil in 1971, 1972, and 1973 before Childers purchased the property. No chemical applications were made thereafter.

The 2–4D would not have had a carry–over residue which would have affected the hops.

8. The 1975 crop was damaged, and the 1976 crop may be damaged. The effect of the spray, however, is limited in time; but the exact time is unknown because the amount of application is unknown.

9. The affected acreage is 7 acres out of the 48[1] acres purchased by defendants from plaintiffs.

10. The market value of the land was probably not affected because the chemicals causing the damage to the hops would not affect asparagus nor very many other crops.

11. Although defendants would not have paid as much for the land if the chemical residue would have been known, Mr. Childers would not have reduced the price.

12. Defendant, who is an experienced hop farmer, has invested $2,000.00 per acre in building a hop yard on the premises.

13. Defendants voluntarily entered into the contract with plaintiffs with a conscious, present want of knowledge as to the chemical history of the land. Defendants, however, knew that any chemical authorized to be used in legal amounts on growing asparagus, which was on the affected area, would not affect hops.

14. In this state and in the Yakima Valley, there is a general knowledge that wide use is made of herbicides and insecticide type sprays. That such chemicals, when used improperly, may damage subsequent crops.

Based upon these findings, the trial court concluded that "defendant is not entitled to reformation of the contract of sale." It is this conclusion of law that defendants challenge on appeal.

Basically, defendants contend the court erred in refusing to reform the contract by reducing the purchase price to reflect their losses based upon a mutual mistake of material fact, i.e., the existence of a chemical residue antagonistic to hops on 7 of the 46 acres covered by the contract. In our view, the findings do not support a conclusion that defendants are entitled to reformation.

---

[1]The purchase actually involved only 46 acres, as plaintiffs reserved 2 acres for a residence.

Here, there is no finding that the parties bargained for the purchase and sale of anything other than general farmland. Its use as general farmland was not affected by the chemical residue which only temporarily affected the special use of a relatively small portion of the acreage for growing hops. The court found that the fair market value of the land was unaffected by the presence of the residue. Consequently, the purchasers received the benefit of their bargain, namely, farmland worth the purchase price.

The finding that plaintiffs assumed that defendants, being hop growers, would grow hops and that defendants planned to grow hops is not tantamount to a finding that the parties agreed to the sale only if the land was suitable for that special use; nor, is such an agreement or condition implicit from the findings. Defendants were free to use the land for any purpose. The contract was not conditioned upon the land's suitability for any special use. Instead, as the court found, defendants, with full knowledge of the widespread use of chemical sprays and that improper use of such chemicals might affect subsequent crops, proceeded with the purchase without striking a bargain as to the suitability of the land for their planned special use. Neither did defendants perform any soil tests to determine the presence of chemicals antagonistic to that use.

In support of defendants' contention that they are entitled to reformation for a mutual mistake, it is asserted that the test for mutual mistake is whether the contract would have been entered into had there been no mistake, citing *Stahl v. Schwartz*, 67 Wash. 25, 33, 120 P. 856 (1912); *Lindeberg v. Murray*, 117 Wash. 483, 201 P. 759 (1921); *Davey v. Brownson*, 3 Wn. App. 820, 823, 478 P.2d 258, 50 A.L.R.3d 1182 (1970). These cases are distinguishable and not persuasive. They involve *rescission* where the mistaken fact was within the contemplation of both parties and was the underlying basis of the entire bargain; and when the mistake was discovered, it destroyed the essence of the bargain. Here, there is no finding the parties agreed to buy and sell land only if it was suitable for hops. In

these circumstances, defendants were at most unilaterally mistaken[2] with respect to one of the many uses of the land. Defendants are not entitled to "have the contract reformed to provide something the parties never agreed upon." D. Dobbs, *Handbook on the Law of Remedies* § 11.6, at 747 (1973). Consequently, the court properly concluded they were not entitled to reformation.

D. Dobbs, *Handbook on the Law of Remedies* § 11.6, at 746, in discussing reformation, aptly observes:

> Where parties agree on a contract, but write it down in a way that does not reflect their true agreement, the writing may be reformed by a court having equity powers. This reformation makes the writing reflect the true agreement of the parties. . . . As courts have said many times, the purpose of reformation is not to make a new contract for the parties, but rather to adequately express the contract they had made for themselves. . . .
>
> . . .
> If the parties contract on mistaken assumptions of fact, or if there is a basic misunderstanding, the remedy

[2]The following authorities cited by the defendants in support of reformation are distinguishable because they involve a *mutual* mistake going to the heart of the bargain and are, therefore, not applicable: *Lindeberg v. Murray*, 117 Wash. 483, 201 P. 759 (1921) (contract for purchase and sale of bank stock *rescinded* based upon mutual mistake going to heart of transaction); *Stahl v. Schwartz*, 67 Wash. 25, 33, 120 P. 856 (1912) (*rescission* of contract based upon mutual mistake of parties in the construction of a will going to the heart of the transaction); *Davey v. Brownson*, 3 Wn. App. 820, 823, 478 P.2d 258, 50 A.L.R.3d 1182 (1970) (contract for purchase and sale of a motel in a fair–to–good condition *rescinded* based on mutual mistake following discovery of extensive termite condition requiring substantial structural repair because it went to the essence of the transaction); *Hood v. Smith*, 79 Iowa 621, 44 N.W. 903 (1890) (exchange of land *rescinded* for mutual mistake where exchange was premised upon one ownership being suitable as a stock farm and it was not, neither party having viewed the property); *Blythe v. Coney*, 228 Ark. 824, 310 S.W.2d 485 (1958) (house purchase contract *rescinded* where both parties mistakenly assumed there was sufficient water supply to make the house livable. This mutual mistake went to the heart of the transaction, *i.e.*, the usefulness of the house); *Hubbard v. Neubert*, 135 Wash. 381, 237 P. 718 (1925) (contract price for house and lot on which payments had been made for considerable time was reformed to reduce purchase price at conclusion of contract if seller did not deliver marketable title to land described in the contract. The contract misdescribed the land so that the house was located on another's property. In effect, the court allowed damages for the misdescription).

is rescission. In such cases, reformation is not an appropriate remedy. There is reason in such cases to "call off the deal," if the mistake is a serious one, but there is no reason to write up a new contract for the parties. The courts have been quite insistent about this, and have said repeatedly that reformation may not be used to foist upon the parties a contract they never made.

(Footnotes omitted.)

Affirmed.

MUNSON, C.J., and McINTURFF, J., concur.

Reconsideration denied December 16, 1977.

Review denied by Supreme Court May 19, 1978.