[No. 2548–3. Division Three. January 18, 1979.]

RANDALL A. KNAPP, ET AL, *Respondents*, v. FRED V. HOERNER, ET AL, *Appellants*.

*Felice & Felice* and *Dennis W. Clayton,* for appellants.

*William Gordon Luscher,* for respondents.

Roe, J.—In 1964, defendants Hoerner had begun operation of a wholesale and retail meat business. In 1973, the defendants entered into an oral agreement with plaintiffs Knapp whereby the Hoerners agreed to sell a one–half interest in this business to the Knapps. The purchase price was $15,000, payable $5,000 down with monthly installments on the remaining $10,000 balance. Additionally, Knapps purchased 50 percent of the existing inventory and paid $400 as one–half of the existing worth of a van used in the business. After this agreement, the Hoerners and the Knapps received equal remuneration for their services in the business.

The conflict in testimony begins in reference to the events following a December 1974 dinner meeting at the Camelot Restaurant, in which the parties agree there was a discussion at that time concerning the possibility of the Knapps purchasing the Hoerners' remaining share of the business. *Mr. Hoerner* testified as follows: (a) he offered to sell his share to the Knapps; (b) that the Knapps indicated they did not have sufficient cash, but Mr. Hoerner indicated that he would accept installments if there were adequate security; (c) he definitely did not state he would buy back the Knapps' interest, nor (d) was there ever any discussion after that meeting at the Camelot in which Mr. Hoerner indicated he would buy back Knapps' one–half interest.

The *Knapps* testified that: (a) at the Camelot meeting they offered to pay cash for the Hoerners' share of the business; (b) that this was rejected, but (c) sometime later in December there was another meeting at which time Mr. Hoerner agreed to pay back to Knapps what they had in

the business. It was the Knapps' position, following the meeting a few days after Camelot, that since the parties could not agree on terms by which Knapps would buy out, Mr. Hoerner had agreed to rescind the original sale to them of one–half and to return "what he had in the deal." Upon that theory, Knapps later sued.

In January 1975, Mr. Hoerner negotiated with one Stewart with a view to Stewart purchasing Hoerners' one–half share of the business. According to the testimony of Stewart, no agreement was reached. Stewart testified that he could only buy one–half, that is, Hoerners' one–half, because Knapps owned the other one–half.

Mr. Hoerner underwent an operation in January 1975. Knapps continued to make the monthly installments through January, February, and March of 1975. As Mrs. Hoerner was about to ·go to the hospital to visit her husband, who was in intensive care, Mr. Knapp stated to her his intention to leave the business by April 1975. Mrs. Hoerner did not tell her husband at that time because of his physical condition.

Later in the spring of 1975, according to Mr. Hoerner's testimony, in an effort to resolve this problem, he contacted an attorney who prepared a document containing terms and conditions under which Hoerners would settle the business relationship with the Knapps and pay them something for their interest. This exhibit was admitted into evidence and forms one of the bases of alleged error in this appeal. The offer was rejected, according to the Knapps, because the figures did not conform with their understanding of what was to be returned to them. The exhibit had been admitted by the trial court as evidence bearing on the state of mind of the Hoerners as to their liability to Knapps. The additional question before this court is whether or not the evidence is sufficient to show a mutual rescission of the 1974 agreement. The trial court ultimately found an agreement to rescind and gave judgment to Knapps for the money they had paid in.

> Mutual rescission is a matter of contract and involves a meeting of the minds of the parties. An assent to an offer of rescission may be express or implied.

*Morango v. Phillips,* 33 Wn.2d 351, 357, 205 P.2d 892 (1949). There may be an oral rescission of a written contract. The rescission means a restoration to status quo. *Morango v. Phillips, supra.* If this is merely a rescission, there is no question involving the statute of frauds. A rescission is not necessarily the same as a contract for terminating the relationship of the parties which might involve new terms. *Russell v. Stephens,* 191 Wash. 314, 316, 71 P.2d 30 (1937).

In their brief, plaintiffs state, quoting *Reynolds Metals Co. v. Electric Smith Constr. & Equip. Co.,* 4 Wn. App. 695, 698, 483 P.2d 880 (1971), that:

> [T]he proper focus of our review of the evidence is to ascertain if substantial evidence supports the trial judge's finding.

The plaintiffs' brief also states:

> In order to overturn the Trial Courts [*sic*] findings, the reviewing Court must determine the evidence *preponderates* against the findings.

(italics ours) citing *Hodges v. Gronvold,* 54 Wn.2d 478, 483, 341 P.2d 857 (1959), which is a pre–*Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959) case; but in addition, *Gronvold* relied upon and quoted for its authority *Richards v. Kuppinger,* 46 Wn.2d 62, 278 P.2d 395 (1955), to the effect that "this court will accept the findings as the facts in the case unless we determine that the evidence preponderates against the findings." *Hodges v. Gronvold, supra* at 482, quoting *Richards v. Kuppinger, supra.* Plaintiffs' brief supports the seemingly inconsistent position as to the function of the appellate court in reviewing findings of fact. We believe the language found in *Stringfellow v. Stringfellow,* 56 Wn.2d 957, 959, 350 P.2d 1003, 353 P.2d 671 (1960), is appropriate:

> Factual disputes are to be resolved by the trial court. The Washington constitution, by Art. IV, § 6, vests that

power exclusively in the trial court. The power of this court is appellate only, which does not include a retrial here but is limited to ascertaining whether the findings are supported by substantial evidence or not. If we were so disposed, . . . we are not authorized to substitute our judgment for that of the trial court.

This position is restated in *Oil Heat Inst. v. Mukilteo,* 81 Wn.2d 7, 9, 498 P.2d 864 (1972). It is further affirmed in *Parkridge v. Seattle,* 89 Wn.2d 454, 464, 573 P.2d 359 (1978), where the court stated:

The rule is that if there is substantial evidence to support the trial court's findings, we will not substitute our judgment for the court's even though, had we been the trier of fact in the first instance, our judgment might have been different.

■ As stated in *Beeson v. Atlantic–Richfield Co.,* 88 Wn.2d 499, 503, 563 P.2d 822 (1977), which involved an action for damages resulting from the cutting of gill nets by a ship, the court stated:

When a trial court has based its finding of fact on conflicting evidence and there is substantial evidence to support it, an appellate court will not substitute its judgment for that of the trial court even though it might have resolved the factual dispute differently. . . . Substantial evidence is said to exist if there is sufficient evidence to persuade a fair–minded, rational person of the truth of the declared premise.

(Citations omitted.)

Regardless of the language which is found in some cases such as *Hodges v. Gronvold, supra,* and *Seattle–First Nat'l Bank v. Hawk,* 17 Wn. App. 251, 254, 562 P.2d 260 (1977), suggesting that:

In order to overturn the trial court's findings, the reviewing court must determine that the evidence preponderates against the findings.

we hold that such statements are not the test and do not square with authorities above cited.

We have carefully reviewed the record. This essentially involves a conflict of testimony between two couples

engaged in the same business. The evidence introduced by Knapps is ample to support a rescission. On the other hand, the evidence of the Hoerners is also ample to rebut it. The closeness of the question is reflected from the fact that, after hearing the testimony, the trial judge indicated there was insufficient evidence of rescission, but after reconsidering, then changed his mind and decided otherwise. The judge made findings of fact and signed a judgment which allowed the sum of $10,127.65, the exact amount paid on the contract of purchase, *i.e.*, the down payment, the monthly payments, one–half of the inventory, and the amount paid for the van. This sum was slightly in excess of the amount prayed, but the pleadings must be deemed to conform to the proof. The trial court did not find a new contract to enter into a new sale back, but merely a rescission which would be in restoration to the status quo.

A critical question is whether or not the trial court erred in admitting the exhibit prepared by the defendant Hoerner in April 1975, by which Mr. Hoerner would buy back Knapps' interest. This document purports to be an outright arm's–length agreement to repurchase Knapps' interest. There is no language or any recital indicating that this was an attempt to compromise or settle a disputed claim. In principle, the judgment signed by the trial court did not vary much from the offer prepared by the defendants, except that the return for the van was in a depreciated value and there was an insubstantial question of the amount concerning the exact payments made. Return payment was allowed only for one–half of the current inventory, which was substantially less than that originally paid. This proposal by defendants in effect would have been a new contract, not a rescission.

Offers of compromise in settlement are favored in law but generally are not admissible, because if they were, it would discourage this attempt. We are not here concerned with a distinct fact which is stipulated in an offer of compromise which may be admitted, so this exception of

*Ingraham v. Associated Oil Co.,* 166 Wash. 305, 6 P.2d 645 (1932), does not apply. Nor did the trial judge admit it under such exception. He admitted it as indicating a state of mind on the part of Hoerner that tended to prove he had agreed to buy out Knapps, or was disposed to buy out Knapps. We think this is a very tenuous exception. If that were true, then all offers of settlement could be admitted to show state of mind. State of mind is an exception to the hearsay rule but not to offers of compromise.

 Since offers of compromise are inadmissible except only as to facts admitted therein, we find no basis for admitting an offer of compromise on the ground that it shows a state of mind, or in effect, an implied belief in liability. No case or text authority has been submitted supporting this view and we have found none. We cannot find the admission of this proposed agreement of April was harmless error in view of the closeness of the court's view of this case, having changed its mind, and the fact that the judge commented on this offer extensively in the reasons for his decision.[1] This would indicate that it was not that inadmissible evidence was disregarded by the judge, but rather, that he relied upon it. Under these circumstances, the case must be reversed since the finding of substantial evidence to support the judgment was based on erroneously admitted evidence.

Hoerners urge that it would be inconsistent for them to accept payments from Knapps for the original purchase of the one–half interest for January, February, and March

---

[1]Excerpts from comments by the court:

"Of course, in addition, there is the, without going into the details, there is the fact that there was a document submitted in April of that year for some sort of settlement, which would tend to indicate a frame of mind that some settlement was in order, even though it was for a different amount and perhaps based on a negotiating position.
". . .

"I think I would just say further that the fact that some offer was made in April by somebody on behalf of the Hoerners certainly indicates a frame of mind on their part to make some sort of reimbursement that they have that in mind and is consistent with my finding of an agreement and so I would maintain my

1975, if they had already agreed the previous December to buy out Knapps; likewise, that Knapps would be inconsistent by asserting that they rescinded the transaction while still making payments due thereon, citing *Davey v. Brownson*, 3 Wn. App. 820, 478 P.2d 258, 50 A.L.R.3d 1182 (1970). That case involved the successful efforts of a purchaser of a motel to rescind on the basis of mutual mistake, namely, the presence of termites. The court stated, "It is obvious that plaintiff could not rescind the transaction and still make the payments due." *Davey v. Brownson, supra* at 826. The court explained why the plaintiff should not have been held responsible for the fact that payments were not only not made on a contract between the immediate parties, but also to the remote vendor, and thus the motel was forfeited and neither party retained possession.

Plaintiffs' explanation for the continued payment on the purchase price of his one–half interest was that, because of the defendant's illness, he wanted to keep the business going to protect his investment. These payments hardly reflect the belief that there was an agreement to rescind. This is not a case where the purchasers are in sole possession of property being bought under a conditional sales contract, which is subject to forfeiture for nonpayment, and thus that the parties should take necessary steps to protect the property. Rather, there was joint possession with the vendor (a one–half interest) and no showing that the business was in jeopardy at the hands of some third person who

decision and would request the Findings of Fact and Conclusions of Law be prepared along that line and they can be mailed to me in Davenport, . . ."

Further excerpts from comments by the court:

"I believe that the elements of the contract are proven, as is the contract for rescission by a preponderance of the evidence. The April agreement was not admitted for the truth, itself, but was admitted to show a state of mind, and I believe it is relevant for that purpose.

"Now, the April agreement, I have checked my notes, and there is testimony that indicates that the Knapps and Hoerners did not talk at all about April 10th. This agreement was prepared between April 1, and 5, and my notes would indicate that the April agreement was submitted on or before April 10th, and I am going to insert that date in the findings at the appropriate place."

might have an overall forfeitable contract as was present in *Davey v. Brownson, supra.* We fail to see how an ongoing business of Hoerners would be affected by the failure of the plaintiff to make monthly payments to Hoerners for the purchase of one–half interest thereof.

While we are not constrained to hold as a matter of law, as urged by the defendants Hoerner, that such payments in themselves preclude Knapps from asserting rescission, yet upon a retrial, it should be considered by the trial court, together with the explanations therefor, and be weighed accordingly.

Judgment is reversed.

GREEN, C.J., and McINTURFF, J., concur.